285 A.2d 399.

STATE *vs.* ROBERT W. RAMSDELL.

DECEMBER 17, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This indictment charges the defendant with violating G. L. 1956, §11-5-5, in that he knowingly and willfully struck a uniformed police officer while the officer was engaged in the performance of his duties. A jury trial was held in the Superior Court. The jury returned a verdict of guilty. The trial justice denied the defendant's motion for a new trial. In this appeal the defendant presses

several exceptions which bring before us the constitutionality of the statute and the correctness of various evidentiary rulings, the charge to the jury and the denial of the motion for a new trial.

The transcript furnishes us the following scenario:

At approximately one-half hour after midnight on July 29, 1966, in the city of Providence, Officer Leonard F. DeMagistris and Officer Reginald L. Iarocci were on patrol in an unmarked police car. Both officers were in uniform. They had been ordered to maintain a close watch on a construction site located near the intersection of Pine and Claverick Streets because this location had been the scene of recent thefts and acts of vandalism. As they approached the site, they observed four individuals, one or more of whom were throwing rocks at a shed used to house various tools and building equipment. As the police approached, the four "separated." Officer DeMagistris "went" to defendant and asked his name. Ramsdell replied by asking the officer his name. The officer then asked Ramsdell where he lived. The defendant responded by asking, "Who wants to know?" and embellished this remark by punching the officer in the mouth causing a laceration of the lip. The defendant was subdued and brought to police headquarters.

We would preface any consideration of the issues raised in this phase of defendant's appeal by pointing out that at the time Ramsdell punched Officer DeMagistris, Ramsdell was *not* under arrest. The defendant fails to distinguish a detention from an arrest. We have made such a distinction in *Kavanagh* v. *Stenhouse*, 93 R. I. 252, 174 A.2d 560 (1961), when we referred to the fact that §12-7-1 expressly authorizes a peace officer to detain any person found abroad whom the officer reasonably suspects has committed, is committing, or is about to commit a crime and to ask the suspect for his name, address, the reason for his presence abroad and his destination. While this court believes it

highly desirable that a citizen's travel upon the streets of our municipalities be unimpeded, we wish to make it clear that there is nothing ipso facto unconstitutional in the police briefly stopping a citizen under circumstances not justifying an arrest for the purpose of a limited inquiry during a routine police investigation. *United States* v. *Oswald,* 441 F.2d 44 (9th Cir. 1971). Although the Fourth Amendment prohibits the "unreasonable seizures" of persons, not every detention of an individual constitutes an unreasonable seizure. *People* v. *Morales,* 22 N.Y.2d 55, 238 N.E.2d 307 (1968). There are circumstances short of establishing the probable cause necessary to make an arrest that can warrant an officer's stopping a pedestrian or motorist on the streets for questioning. *Terry* v. *Ohio,* 392 U. S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People* v. *Mickelson,* 30 Cal. Rptr. 18, 380 P.2d 658 (1963); *Stone* v. *People,* Colo. 485 P.2d 495 (1971); *People* v. *Peters,* 18 N.Y.2d 238, 219 N.E.2d 595 (1966). The essential needs of public safety demand a prompt police inquiry into any suspicious or unusual street activity. It is not only the right but the duty of police officers to investigate suspicious behavior both to prevent crime and to apprehend offenders. *State* v. *Fish,* 280 Minn. 163, 159 N.W.2d 786 (1968). Cooperation with the officer at the initial inquiry into a party's suspicious behavior minimizes the risk of an unlawful arrest of the innocent. It can also bring about a prompt release and prevent an intrusion upon one's liberty and reputation. *Commonwealth* v. *Salerno,* 356 Mass. 642, 255 N.E.2d 318 (1970). We have no hesitancy in declaring that Officer DeMagistris was amply justified in stopping Ramsdell and inquiring as to his identity and his actions at the location and at the hour the confrontation took place.

Rather than resting our efforts upon the distinction between detention and arrest, we believe it advisable to address ourselves to the questions of defendant's alleged right

to defend himself against an unlawful arrest and his unquestioned right to self-defense. They were raised by a demurrer to the indictment alleging an infringement of defendant's constitutional right to due process and the deprivation of rights reserved to him by art. I, sec. 23 of the Rhode Island constitution.[1] The demurrer was overruled and an exception thereto was duly taken.

The right to resist an unlawful arrest was cognizable at common law. However, this right was abolished in Rhode Island not by the enactment of §11-5-5, the assault felony statute, in 1965 but by the passage of an act in 1941 (now cited as §12-7-10) which makes it unlawful to forceably resist an illegal arrest if such person has reasonable grounds to believe that he is being arrested by a peace officer. The thrust of defendant's constitutional challenge is, therefore, aimed more precisely at §12-7-10 rather than §11-5-5.

The identical issue, as raised here, was before the court in *People* v. *Curtis,* 74 Cal. Rptr. 713, 450 P.2d 33 (1969). The California statute in question was substantially similar to our §12-7-10. The court in *Curtis* defined an unlawful arrest as one that is made without probable cause and went on to say that while an individual's rights are violated by an arrest made without probable cause, the abolishment of his right to resist such an arrest did not constitute or cause a deprivation of his liberty because of the simple fact that today's police are so armed and equipped that it is inconceivable that a suspect using *reasonable* force can escape from or deter his arrest be it lawful or unlawful. Self-help no longer supplies a ready remedy whereby an individual can regain his liberty but rather it exposes the officer, the suspect and the innocent bystander to far graver consequences than the unlawful arrest itself. By the enactment of §12-7-10, the Legislature has not changed or reduced the

---

[1]Section 23 reads: "The enumeration of the foregoing rights shall not be construed to impair or deny others retained by the people."

effective remedies available against an arrest made without probable cause. It merely requires the arrestee to submit peacefully to the arrest and pursue his remedy in the courts and not on the streets. The General Assembly's rejection of physical violence as a means of regaining liberty cannot be realistically considered as a deprivation of one's liberty within the constitutional guarantee of due process. Views similar to those expressed in *Curtis, supra,* may be found in *United States* v. *Ferrone,* 438 F.2d 381 (3d Cir. 1971); *United States* v. *Simon,* 409 F.2d 474 (7th Cir. 1969); *State* v. *Koonce,* 89 N. J. Super. 169, 214 A.2d 428 (1965).

We believe that the principles expounded in the *Curtis* case are sound and we find no validity to defendant's complaint relative to his right to resist an unlawful arrest. We would also add that any rights reserved to defendant by the Rhode Island constitution are subject to the General Assembly's police power. *Kavanagh* v. *Stenhouse, supra.* The legislative abolition of the right to resist an unlawful arrest is unquestionably a proper exercise of the police power.[2]

---

[2]At the turn of the century, the United States Supreme Court recognized the common-law right to resist an unlawful arrest. *John Bad Elk* v. *United States,* 177 U. S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900). *See also United States* v. *Di Re,* 332 U. S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

In recent times, however, this common-law right has become the subject of much criticism. The decline of the rule is attributed to a spirited attack made by Professor Warner in *The Uniform Arrest Act,* 28 Va. L. Rev. 315 (1942). Section 5 of the Act abrogates the right to resist whenever "a person has reasonable ground to believe that he is being arrested by a peace officer * * * regardless of whether or not there is a legal basis for the arrest." The Model Penal Code §3.04 (2)(a)(i) (Tent. Draft No. 8, 1958) denies the right "to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful." Further critical comment may be found in Note, *Criminal Law—Arrest—The Right to Resist Unlawful Arrest,* 7 Natural Resources Journal 119 (1967); and Note, *The Right to Resist an Unlawful Arrest: An Outdated Concept?,* 3 Tulsa L. J. 40 (1966).

The right to resist arrest has also been eliminated by legislative action in California, Delaware, Illinois, New Hampshire and New York. Cal. Penal Code §834(a) (West Supp. 1968); Del. Code Ann. Title II §1905

There is no merit to defendant's assertion that the assault felony statute deprives him of his right to defend himself. A reading of the statute shows that before an accused can be found guilty of assaulting a policeman, it must be shown that at the time he was struck, the officer was in uniform and was *"engaged in the performance of his duty."* It is this last-quoted phrase which preserves defendant's right of self-defense.

It is elementary that a police officer may use only such force as is necessary to effectuate an arrest. *Tessier* v. *La-Nois,* 97 R. I. 414, 198 A.2d 142 (1964). Section 12-7-8 expresses the rule in the negative when it states that "no unnecessary or unreasonable force" shall be employed in making an arrest. A police officer, therefore, who uses excessive force in making an arrest has exceeded the scope of his duties. If it be found that an arresting officer has used excessive force and is thereby injured by an arrestee attempting to defend himself, the officer cannot be considered to have been injured while engaged in the performance of his duties and the assault felony statute is inapplicable. *State* v. *Mulvihill,* 57 N. J. 151, 270 A.2d 277 (1970).

There is a reasonable rationale for one rule which requires a citizen to quietly yield to an unlawful arrest and another rule permitting a citizen to use reasonable force to counter the excessive force of an arresting officer. Implicit in the adoption of these two principles is a recognition that liberty can be quickly restored by resort to the legal profession

---

(1951); Ill. Ann. Stat. ch. 38 §7-7 (Smith-Hurd 1961); N. H. Rev. Stat. Ann. 594.5 (1955); N. Y. Penal Law §35.27 (McKinney Supp. 1968).

There is one author who expresses concern about the steady diminution of the right to resist an unlawful arrest and takes issue with the observation made by many courts and scholars that the available legal remedies are an adequate substitute for this right. Chevigny. *The Right to Resist an Unlawful Arrest,* 78 Y. L. J. 1128 (1969). The New York statute referred to in the Chevigny article is popularly known as "no-sock" legislation.

and an acknowledgment that, unless a citizen is afforded the opportunity to protect himself, the restoration of a fractured limb falls within the exclusive province of the medical profession. The abolition of the common-law right to resist an unlawful arrest, therefore, is in no way related to the citizen's right to protect himself from the excessive force of what might be described as an overzealous police officer.

In speaking of a citizen's right to defend himself against the arresting officer's excessive force, we wish to stress certain factors. If it develops that an officer used reasonable force, the application of the principle of self-defense is not warranted and the felony provisions of §11-5-5 apply. If a citizen protects himself with a force which is greater than necessary, he forfeits his right to self-defense and may be convicted of a simple assault pursuant to §11-5-3. *See Martin* v. *Estrella*, 107 R. I. 247, 266 A.2d 41 (1970). If his self-defense involves the use of a "dangerous weapon," he runs the risk of a felony conviction under the terms of §11-5-2.

It is clear that to constitute the felonious conduct proscribed by §11-5-5, the assault must be on a police officer who is actually engaged in the performance of his duties. We emphasize, however, that a police officer is under no duty to use excessive force in making an arrest. This being so, the statute does not abrogate the suspect's right to defend himself against the excessive force exhibited by the arresting officer.

From the foregoing discussion, it is clear that the abolition of defendant's common-law right to resist an unlawful arrest is constitutionally permissible. It is also obvious that §11-5-5 does not abrogate defendant's right to defend himself. Accordingly, defendant's demurrer to the indictment was properly overruled.

We turn now to the exceptions relating to the evidentiary rulings made at the trial. While it is conceded that Officer

DeMagistris was in uniform at the time he encountered Ramsdell, the state was required to prove that DeMagistris was a police officer at the time he was punched. To accomplish this, the officer testified in uniform; he testified as to the time of his appointment to the Providence Police Department and that he was a member of the department when he interrogated defendant. Introduced into evidence was a departmental general order issued by the Chief of Police at the direction of the Commissioner of Public Safety. It is dated September 11, 1964, and states that on that date Leonard F. DeMagistris took his oath as a "4th Grade Patrolman." The defendant took exceptions to the policeman's appearance in uniform, his testimony as to his occupation and the admission of the commissioner's general order. In regard to this facet of his appeal defendant contends that such evidence, as it tends to show DeMagistris' status on July 29, 1966, violates the best evidence rule. He claims that the best evidence attainable which would prove DeMagistris' occupation at the time in question was the commission or certificate of appointment issued to the officer at the time he took his oath. Since a certificate was, according to DeMagistris, available but not introduced into evidence, defendant argues that all other evidence tending to prove the disputed fact should have been excluded. We think otherwise.

The defendant has misconceived the circumstances which require the invoking of the best evidence rule. While the purpose of the rule is to bar the admission of any evidence which by its nature indicates that there is other evidence more direct and conclusive in proving a disputed fact, strictly speaking, it is applicable only when a litigant is attempting to prove the *terms* of a writing. In such circumstances, the original writing must be produced unless a satisfactory explanation for its absence is given. *Hilligoss* v. *State,* 253 Ind. 443, 255 N.E.2d 101 (1970); *Commonwealth* v. *Balu-*

*konis,* 357 Mass. 721, 260 N.E.2d 167 (1970); *York* v. *State,* 45 Wis.2d 550, 173 N.W.2d 693 (1970); *Glass-Tite Industries, Inc.* v. *Spector Freight Systems, Inc.,* 102 R. I. 301, 230 A.2d 254 (1967); 4 Wigmore, *Evidence* §§1173-1175 at 301-304 (3d ed. 1940); McCormick, *Evidence* §§195-196 at 408-409 (1954). The rule, however, has no application if there is an attempt to prove either the *existence* of a writing or a fact that exists independently of the writing. The rule will not be invoked when there is no genuine dispute as to the contents of the writing. *State* v. *White,* Ore. App., 477 P.2d 917 (1970); *State* v. *King,* 71 Wash.2d 573, 429 P.2d 914 (1967); *Goetsch* v. *State,* 45 Wis.2d 285, 172 N.W.2d 688 (1969); McCormick, *supra,* §198 at 410, §209 at 424-425. Here, there was no dispute as to the precise contents of DeMagistris' certificate. Everyone agreed that it would show that sometime in 1964 DeMagistris took his oath and was appointed as a Providence policeman. There was no question as to the certificate's existence. The dispute was to its absence at trial. The best evidence rule was not applicable to the facts presented here.

We would also point out that there is a well-recognized exception to the best evidence rule which permits the introduction of oral testimony to show the appointment and acts of public officials. *Commonwealth* v. *Kane,* 108 Mass. 423, 11 Am. Rep. 373 (1871); *State* v. *Roberts,* 52 N. H. 492 (1872); *State* v. *Jacks,* 462 S.W.2d 744 (Mo. 1970); *Lamas* v. *State,* 365 S.W.2d 163 (Tex. Crim. 1963); *State* v. *Taylor,* 70 Vt. 1, 39 A. 447 (1898); 1 Underhill, *Criminal Evidence* §109 at 192 (5th ed. 1956); 2 Wharton, *Criminal Evidence* §608 at 503 (12th ed. 1955). The basis for this exception can be found in *Kent* v. *Atlantic DeLaine Co.,* 8 R. I. 305 (1866), where the court alluded to the well-established principle that all acts done by what appears to be a public official are presumed to have been done in compliance with the law until the contrary is shown. It is like-

wise presumed that an individual who acts as a public official has been duly appointed so that he need not produce his commission or certificate of appointment.[3] He is considered as a de facto officer. This exception is well-recognized both in civil and criminal cases. *State* v. *Roberts, supra.* In the criminal field there are many cases where the exception has been applied to prosecutions involving either assaulting or resisting a police officer engaged in the performance of his duty.

This presumption does not operate when a party sues or defends in his own right as a public official. It is not enough that he acts de facto. He must show that he holds legal title to the office. *Stott* v. *Chicago,* 205 Ill. 281, 68 N.E. 736 (1903); *Lamas* v. *State, supra.*

The defendant's exceptions as they relate to the best evidence rule are overruled.

There is absolutely no need for an extended discussion of defendant's exceptions to the denial of his request for instructions and his motion for a new trial. Some of his

---

[3]Our search of the statutes discloses no requirement that a commission or a certificate be issued to a police officer. Section 36-1-3 does provide for the issuance of a commission to those individuals either elected to office by the General Assembly or appointed to office by the Governor or "elected" by the town council to the office of justice of the peace. Section 45-4-11 requires that any person elected to a municipal office be furnished with a certificate showing that he has taken the prescribed oath.

In *Pendleton* v. *Briggs,* 37 R. I. 352, 92 A. 1024 (1915), an argument was made that is somewhat similar to that espoused here by Ramsdell. There, the action was brought for the collection of taxes owed the town of Westerly by a decedent's estate. The defendant executor in contending that the assessments were illegal asserted that the suit must fail because the certificate described in §45-4-11 had not been introduced into evidence. The court held that the most the certificates would show was that the assessors had taken their oath of office and that this fact had already been established.

requests were statements of law which were either incorrect or vague or not supported by the evidence adduced at trial. If given, they would have accomplished nothing but to have confused the jurors.

In appealing from the denial of his motion for a new trial, the defendant has the burden of showing that the trial justice failed to perform the duties required of him, or having done so, he overlooked or misconceived material evidence on a controlling issue, or was clearly wrong. His attempt consists in characterizing Officer DeMagistris' presence at the construction site as that of an "ubiquitous interloper" rather than as a police officer performing his duty. This characterization, along with his other comments relative to the trial court's consideration of his motion, falls far short of sustaining his burden. The defendant's exception to the denial of his motion for a new trial is overruled.

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Henry Gemma, Jr.,* Special Asst. Attorney General, for plaintiff.

*Aram K. Berberian,* for defendant.