STATE OF NEBRASKA, APPELLEE, V. BERNITA L. ANDREWS,
APPELLANT.

255 N. W. 2d 875

Filed July 13, 1977. No. 41153.

P. J. Heaton, Jr., for appellant.

Paul L. Douglas, Attorney General, and Steven C. Smith, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

CLINTON, J.

The defendant, Bernita L. Andrews, was charged with second degree murder in the killing of her husband, Donald R. Andrews, and upon trial by jury a verdict of guilty of manslaughter was returned. She was sentenced to a term of 1 year imprisonment. The defendant did not deny that she shot and killed her husband. She offered a defense of justification by reason of self-defense and defense of her 12-year-old son under the provisions of sections 28-836 and 28-837, R. R. S. 1943. The error assigned on the appeal to this court is that the trial court should have directed a verdict of acquittal because the undisputed facts established the defense of justification under the above statutes. No attack is made upon the instructions by which the defense of justification was submitted to the jury. We affirm.

Under the evidence, the ultimate question which the jury was called upon to decide was whether the

defendant reasonably believed, from the circumstances as shown by the evidence as they then appeared to the defendant, that the use of deadly force was immediately necessary to protect herself or her son from death or severe or serious bodily harm at the hands of Andrews. The jury was instructed on the defense of justification in accordance with the pertinent portions of NJI No. 14.33, Nebraska Jury Instructions, 1975 Pocket Part. This instruction placed on the State the burden of proving beyond a reasonable doubt that the use of deadly force was not justified.

A careful reading of the record leads us to the conclusion that a jury question was presented and that it was for the jury to determine whether the use of deadly force was justifiable.

A detailed recital of the evidence would serve no useful purpose and we therefore summarize. The shooting arose out of a domestic quarrel which occurred after the defendant, Andrews, and the defendant's daughter had spent an evening at various bars in the city of Sidney. Andrews had become very intoxicated. Witnesses described him as staggering drunk and a blood sample taken after death indicated an alcoholic content of 0.42 of 1 percent, which alcoholic content expert testimony indicated would render most persons unconscious. Andrews returned to the residence of the parties on foot previous to the return of the defendant. The defendant's 12-year-old son was babysitting at the residence with the daughter's children. He testified that when Andrews came home Andrews struck him because of a remark made by the boy. Leaving the home the boy reported the matter to his mother. Then she went to the home of the parties with her daughter. At that time Andrews was lying on the bed in the bedroom used by Andrews and the defendant. The defendant confronted Andrews with the boy's accusations. A somewhat extended argument

covering matters other than the striking of the boy developed. Andrews apparently became angry.

The evidence would permit the jury to find that before the argument reached its peak, and while Andrews was still lying on the bed, the defendant removed a loaded .22 caliber rifle from its location in the bedroom and placed it behind the door of the boy's bedroom immediately off the kitchen. Her son, on his own initiative, then took the gun from the location in which it was placed by his mother and put it in the closet of his room. As the quarrel developed and Andrews rose from the bed, defendant went to the kitchen, followed by Andrews. The defendant reached for the gun, and not finding it in the location where she had placed it, directed her son to get the gun, which he did. [The defendant's version of the placing of the gun was that she had not placed the gun behind the door, but that she had given the gun to her son and told him to hide it.] At the time the defendant received the gun from her son pursuant to her instructions, Andrews was then in the living room, approaching the kitchen, and the defendant and her son were in the kitchen. The defendant testified that she ordered Andrews to stop, and that when he did not, she fired a shot. When Andrews did not fall, but kept coming, she testified that she thought the shot had missed him so she fired another shot and Andrews collapsed. The autopsy showed that both shots had struck him in the chest, one passing entirely through his body. The shots were the cause of death.

The evidence would permit the jury to find that Andrews was so intoxicated that he was not likely to have caused serious harm, and that the claimed belief of the defendant that the use of deadly force was immediately necessary was not true. It would also permit the jury to find that while Andrews was moving toward the defendant he was gesticulating and mumbling, but not making threats of death or ser-

ious bodily harm, which the daughter testified that he was making. The daughter testified that he said, referring to the son, "he was going to stop that little bastard from causing any more trouble, if he had to kill him to do it." This latter testimony was seriously impeached. The witness admitted that a previous written statement given to law enforcement officers shortly after the incident mentioned no such threat and that she had first mentioned the matter to defense counsel only 2 weeks before trial and almost 10 months after the homicide.

The defendant testified as to her reasons for believing that Andrews intended to do her or her son harm, including the fact that he had struck her with his fists and that he had on two recent previous occasions shot at her with the same gun she used to shoot him, one which she had earlier given him as a present. Both previous shootings allegedly occured at extremely close range; one while she lay in bed and he stood nearby and one while she stood at the side of the car in which he was seated, and fired at her feet.

It was for the jurors to determine the truth of all the testimony, the import of the same, and whether, under the facts which they found to be true, the defendant was justified in her claimed belief that the immediate use of deadly force was necessary to save either herself or her son from death or serious bodily harm at the hands of Andrews. It is not the province of this court on appeal to pass on the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence. These matters are for the jury. State v. Bohannon, 187 Neb. 594, 193 N. W. 2d 153; State v. Lacy, 195 Neb. 299, 237 N. W. 2d 650. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the State, to support it. State v. Lacy, *supra;* State v. Fowler, 193 Neb. 420, 227 N. W. 2d 589.

AFFIRMED.