## STATE

v.

## Terrence GELINAS.

No. 78–240–C.A.

Supreme Court of Rhode Island.

Aug. 5, 1980.

Dennis J. Roberts, II, Atty. Gen., David A. Cooper, Sp. Asst. Atty. Gen., for plaintiff.

Thomas J. Kane, Woonsocket, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

A Superior Court jury convicted the defendant of assault on a uniformed police officer engaged in the performance of his

duties, the assault causing bodily injury, a violation of G.L.1956 (1969 Reenactment) § 11–5–5, as amended by P.L.1979, ch. 249, § 1. The jury also found him not guilty on a second count that charged him with assault with a dangerous weapon,[1] a violation of G.L.1956 (1969 Reenactment) § 11–5–2.

The trial justice sentenced defendant to one year's imprisonment; he ordered defendant to serve the first three months; he suspended the remaining nine months, and he imposed two years' probation to begin upon defendant's release from prison. The defendant appeals his felony conviction, alleging that the trial court erred in failing to give certain instructions to the jury, in admitting certain evidence at trial, and in denying defendant's motion for a new trial.

The record reveals that two Woonsocket police officers in the early evening hours of August 27, 1976, responded to a complaint that a number of juveniles were consuming alcoholic beverages on the corner of Fairmont Street and Third Avenue in that city. The youths scattered when the uniformed policemen arrived, but four of them remained to gather together their liquor. The officers confiscated the liquor and ordered the four youths into the patrol car. The officers informed the youths that, at the police station, authorities from the Juvenile Bureau would speak to them, telephone their parents, and release them to their parents.

One of the four, defendant's younger brother Billy Gelinas, walked away from the group down Third Avenue to join approximately twenty people gathered in the parking lot of the Bourcier Brothers' warehouse. The officers put the other three juveniles into the cruiser and drove to the parking lot intending to apprehend the fourth. Officer Michael F. Magnan approached Billy, and explained to him that

he would have to come to the police station.[2] Billy refused, and when the officer placed his hand on Billy, he struck the officer. A struggle ensued. Billy testified that Officer Magnan had torn his shirt and had dragged him face down across the parking lot.

As Officer Magnan attempted to subdue Billy, the other officer, Emil LeDuc, drew his nightstick and ran in a semicircle around the combatants to fend off the crowd that had closed in on them. Billy's older brothers, Eddy Gelinas and defendant, Terrence Gelinas, joined the affray. The defendant threatened Officer LeDuc, saying, "Leave my brother alone, LeDuc, or I'm going to get you." He insisted on getting past Officer LeDuc to where Billy and Officer Magnan were struggling. He and Officer LeDuc began shoving each other.

Officer LeDuc testified that the crowd began to press in on him and to kick and shove him. He stated that the crowd then separated somewhat and he was able to run to the cruiser to radio for help.

The defendant followed Officer LeDuc to the patrol car repeatedly insisting that he leave Billy alone. After calling for assistance, Officer LeDuc turned to see his partner struggling on the ground with both Billy and Eddy Gelinas, the latter striking the officer with a piece of tar about the back and head. Officer LeDuc pushed past defendant and ran to aid Officer Magnan.

He testified that he struck Eddy Gelinas with his club[3] and then turned around to defend against an anticipated attack from defendant whom he knew to have followed close behind. Officer LeDuc stated that as he turned, he received a blow to the face and fell to the ground. He claimed that defendant then sat on him and began strik-

---

1. At the close of the state's case, the trial justice granted defendant's motion for a judgment of acquittal on the assault-with-intent to murder charge in count II and amended count II to charge the lesser offense of assault with a dangerous weapon.

2. Officer Magnan apparently attempted to make a misdemeanor arrest under the authori-

ty granted in G.L.1956 (1969 Reenactment) § 12–7–3, as amended by P.L.1977, ch. 71, § 1. Billy claimed that he never heard Officer Magnan's explanation.

3. Edward testified that Officer LeDuc had struck him with a billy-club on his arms as he covered his head with them.

ing him. The officer testified that he could not get up and that he saw defendant pick up a piece of concrete and strike him in the face with it as he lay on the ground. He said thereafter he could not see.

Several defense witnesses testified that Officer LeDuc and defendant struggled momentarily over control of the nightstick before they both fell to the ground fighting. Three eyewitnesses who testified for the defense, as well as both officers, stated that they saw defendant strike Officer LeDuc.

The injured officer and the physician who treated him testified to the extent of his injuries. The area around his right eye was swollen; he had been unconscious for five to ten minutes after the fight; he exhibited the symptoms of a concussion: dizziness, headaches, and nervousness.

## I

■ The defendant first urges us to find error in the trial justice's charge to the jury on the theory that he was privileged to protect his brother, Edward, against the officer's allegedly unlawful force. The Attorney General, in response, asserts that the trial justice clearly and adequately charged the jury on the law governing this theory of defense.[4]

■ We recognize that the trial justice must maintain the defendant's right to request jury instructions on the law applicable to issues of fact which the evidence, however tenuous or incredible, has raised. *State v. Arpin*, R.I., 410 A.2d 1340, 1352 (1980); *State v. Butler*, 107 R.I. 489, 490–91, 268 A.2d 433, 434 (1970).

Cognizant of his responsibility, the trial justice enumerated the four elements of the crime charged in count I: one, that defendant knowingly and wilfully struck the officer; two, that the officer was uniformed; three, that the officer sustained bodily inju-

ry; four, that the officer was then engaged in the performance of his duties. He instructed the members of the jury that the state had the burden of convincing them beyond a reasonable doubt of the existence of every element before they could render a guilty verdict. He focused the jury's attention on the fourth element, calling it the primary question in the case. In order to resolve that question, the trial justice stated, the jury must decide whether the injured officer had employed excessive force in arresting Edward Gelinas for interfering in Officer Magnan's struggle with William Gelinas. If the jury found that Officer LeDuc had exerted excessive force, thus forfeiting his privilege to use force in performing his duties, then they could find that defendant justifiably countered that force with protective force and, therefore, was not guilty under count I.

The trial justice in his instructions stated, "The law is this: a third person does not have a right to interfere and assist the person being arrested, and the person doing the arresting is clearly not using unnecessary force, no intervention is permissible under the law even though the arrest is illegal.

" * * *

"If you find that LeDuc was not using excessive force and was in the performance of his duty in attempting to arrest Edward for interfering with Magnan, and this defendant on that occasion then struck Officer LeDuc, LeDuc being engaged in the performance of his duty; and LeDuc was injured as a result, then he is guilty as charged by the State. If LeDuc used excessive force in the attempt to remove Edward Gelinas from Officer Magnan, LeDuc was not in the performance of his duty, and the defendant is not guilty."

*Butler*, 107 R.I. 489, 490–91, 268 A.2d 433, 434 (1970); *cf. State v. Small*, R.I., 410 A.2d 1336, 1338 (1980) (no evidence to warrant instruction); *Commonwealth v. Monico*, 373 Mass. 298, 303, 366 N.E.2d 1241, 1244 (1977) (insufficient evidence to raise issue).

---

4. The Attorney General apparently does not contest that defendant had a right to have the trial justice frame for the jury the issue whether defendant justifiably assaulted the police officer in defense of his brother. We agree that the evidence warranted an instruction on the defense of defense of another. *See State v.*

■ General Laws 1956 (1969 Reenactment) § 12–7–10 requires an arrestee to submit peacefully and, if he has been unlawfully arrested, to pursue his remedy in the courts. Viewed in the light of § 12–7–10, we believe it is clear that the police-assault statute, § 11–5–5, does not, however, abrogate the defendant's right to defend himself when excessive force is used against him. *State v. Ramsdell*, 109 R.I. 320, 327, 285 A.2d 399, 404 (1971). If it develops that the arresting officer used reasonable force, the principle of self-defense is inapplicable. *Id.* at 327, 285 A.2d at 404.

The issue before us, however, is whether the trial justice properly instructed the jury on the right of an individual to come to the aid of another whom uniformed police officers are arresting through the alleged use of excessive force. The defendant contends that the trial justice gave inadequate instructions on the use of force in protection of another. The trial justice in effect instructed the jury that they must decide that the officer in fact used excessive force against defendant's brothers at the time defendant attacked the officer before they could find that defendant committed a justifiable act. If the jury believed that excessive force was not actually used, they had to reject defendant's alleged defense and, on satisfaction of the other elements, return a guilty verdict.

■ It is a well-accepted principle that in effecting an arrest an officer has the right to use such force as he may reasonably believe necessary in order to discharge

properly his duty. General Laws 1956 (1969 Reenactment) § 12–7–8; *see State v. Ramsdell*, 109 R.I. at 326, 285 A.2d at 404; *Tessier v. LeNois*, 97 R.I. 414, 417, 198 A.2d 142, 143 (1964). When there is evidence tending to show the law-enforcement officer's use of excessive force, the trial justice must instruct the jury that the force used against the law-enforcement officer was justified provided the defendant limited his assault to the use of reasonable force in defending himself from excessive force. *State v. Ramsdell*, 109 R.I. at 327, 285 A.2d at 404.

There are two contrasting principles that control the defense of another as it exists in other jurisdictions.[5] One rule adopted by a number of states takes the position that a third-party intervenor stands in the shoes of a person whom he is aiding. Under this view it is immaterial whether the intervenor defendant acted as a reasonable person would have; the right attaches to the defendant only when the person being defended would have had the right of self-defense. *See, e. g., People v. Booher*, 18 Cal.App.3d 331, 95 Cal.Rptr. 857 (1971); *Purdy v. United States*, 210 A.2d 1 (D.C.App.1965) (dictum); *State v. Anderson*, 40 N.C.App. 318, 253 S.E.2d 48 (1979); *State v. Wenger*, 58 Ohio St.2d 336, 390 N.E.2d 801 (1979).[6] In contrast, other jurisdictions focus on the conduct of the intervenor without regard to the self-defense claim of the arrestee and hold that an intervenor may aid another if it appears to be necessary, though he acts on a mistaken belief, even in a situation in which the person who is aided would not have had the right to claim self-defense.

---

5. Some jurisdictions adhere to the somewhat antiquated view that a person may only defend others to whom he is somehow related, either by consanguinity, employment, marriage, or acquaintance. *E. g., Tipton v. State*, 1 Md.App. 556, 562, 232 A.2d 289, 291 (1967); *Carter v. State*, 507 P.2d 932, 934 (Okl.Cr.1973).

Apparently, these states believe that the relationship between the protector and his charge not only compels action but also minimizes the likelihood that the actor will misinterpret the situation and intercede on behalf of the wrongdoer. While we do not question the utility of allowing family members to protect one another, we believe that restricting the privilege only to family members ignores the important social goal of crime prevention, a duty of every citizen. *See Commonwealth v. Martin*, 369 Mass. 640, 650, 341 N.E.2d 885, 891 (1976). *See generally* Note, *Justification: The Impact of the Model Penal Code on Statutory Reform*, 75 Colum.L.Rev. 914, 932–33 (1975).

6. In New York the rule developed in case law has been modified by legislative action. *Compare People v. Young*, 11 N.Y.2d 274, 229 N.Y. S.2d 1, 183 N.E.2d 319 (1962), *with* N.Y. Penal Law § 35.15 (McKinney 1975). Opinions in Washington's Supreme Court and Court of Appeals appear at odds. *Compare State v. Penn*, 89 Wash.2d 63, 568 P.2d 797 (1977), *with State v. Westlund*, 13 Wash.App. 460, 536 P.2d 20 (1975).

See, e. g., United States v. Ochoa, 526 F.2d 1278 (5th Cir. 1976); United States v. Grimes, 413 F.2d 1376 (7th Cir. 1969); Coleman v. State, Del., 320 A.2d 740 (1974); Commonwealth v. Martin, 369 Mass. 640, 341 N.E.2d 885 (1976); State v. Andrews, 199 Neb. 60, 255 N.W.2d 875 (1977); Ky. Rev.Stat. § 503.070 (1975).

Up until now, this court has never been asked to decide under what conditions a defendant may claim justifiable use of force when intervening on behalf of a third party. Being confronted with different schools of thought, we must decide which theory of law we shall follow.

 After reviewing the available authorities, we hereby adopt the rule that one who comes to the aid of an arrestee must do so at his own peril and should be excused only when the individual would himself be justified in defending himself from the use of excessive force by the arresting officer. Purdy v. United States, 210 A.2d at 2; State v. Anderson, 40 N.C.App. at 323–325, 253 S.E.2d at 52; State v. Wenger, 58 Ohio St.2d at 340–41, 390 N.E.2d at 804. A third party intervenor stands in the shoes of the person whom he is aiding. The defendant may use such force to prevent injury to the person he aids as defendant would use in self-defense. See Del. Code tit. 11, § 469 (1979), Model Penal Code § 3.05 (Tent. Draft No. 8, 1958). Furthermore, the jury must resolve the factual issue raised by this defense when it is properly raised by the evidence at trial. See State v. Small, R.I., 410 A.2d at 1338.

 The defendant before us was entitled to an instruction that presented the jury with the choice of findings that defendant was justified in interfering with the arrest of his brother if the arrestee was himself justified in resisting arrest. In reading the trial justice's instructions we are of the opinion that he adequately charged the jury as to the rights of a person who defends another against the use of excessive force. He told the jury in clear language that unless they found that Officer LeDuc has used excessive force against defendant's brother, they could not find that defendant had acted justifiably. This instruction is consistent with the rule we adopt today since if Officer LeDuc had not used excessive force, Edward could have had no right to resist the arrest, and, accordingly, defendant could not have been privileged to come to Edward's defense. The jury therefore resolved this factual issue in the light of a charge that properly set out the controlling law in this jurisdiction.

## II

The defendant next claims that the trial justice abused his discretion when he allowed the state to place into evidence a piece of concrete with which defendant had allegedly struck Officer LeDuc. He argues that because of the paucity of evidence linking the concrete to him, its admission impermissibly prejudiced his cause. We disagree.

 As a general rule the resolution of questions of evidentiary relevance, materiality, and admissibility rests in the sound discretion of the trial justice; his ruling will not constitute reversible error unless it is a prejudical abuse of discretion. See Soucy v. Martin, R.I., 402 A.2d 1167, 1170 (1979). It is well settled that evidence is admissible provided it is competent evidence that reasonably tends to prove a material fact in issue and it is not offered for the purpose of arousing the passions of the jury. State v. Bowden, 113 R.I. 649, 657–58, 324 A.2d 631, 637 (1974).

 In evaluating the trial court's exercise of judicial discretion an appellate court must be shown that this discretion was clearly abused before reversal is warranted. In the case at bar, complainant identified the concrete as the instrument of his injury. The defendant was charged with assault with a dangerous weapon. This evidence was logically material and legally relevant to the issue whether defendant assaulted the police officer with a dangerous weapon. See State v. Smith, 115 R.I. 93, 95–96, 339 A.2d 736, 737–38 (1975).

The admission of this evidence was not prejudical to the extent that it inflamed the emotions of the jury to the prejudice of defendant. On the contrary, as the alleged means of committing the offense, it was highly probative. Moreover, its admission did not in any sense prejudice defendant's case; the jury did not find defendant guilty of assault with a dangerous weapon. We hold therefore that the admission of the concrete was not an abuse of discretion.

### III

The defendant further complains that the trial justice should have excluded from evidence the two statements he made while in custody at the Woonsocket Police Station because the police obtained them without first fully advising him of his rights as provided in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

 Police obtained the first statement when one of the officers, Raymond E. Scott, overhead defendant speaking to his mother on a telephone located in the police station. Officer Scott testified that he heard defendant tell his mother in a loud voice, "Ma, you better get a hold of someone. I'm at the police station. I'm in big trouble." He paused, then continued, "He was choking Billy. I picked him up banged him against the wall."

The defendant argues that since he was in police custody, he was entitled to have the police advise him of his *Miranda* rights before they could use his statement against him. Alternatively, he avers that the police conduct constituted impermissible eavesdropping.

In overruling defendant's objection, the trial justice pointed out that nothing in *Miranda* precludes the introduction of a statement made in the absence of any police questioning to a person not connected with the police. Moreover, although the trial justice agreed with defendant that Rhode Island law prohibits covert police tactics in eliciting inculpatory statements, he found no evidence in defendant's case that the police were doing anything more sinister than milling around the phone booth.

The defendant made the second statement in controversy to Woonsocket Police Sergeant Rodney C. Remblad when the sergeant relayed a message from his attorney to him in his police station cell. The defendant told the sergeant that he wanted to tell him what had happened. The sergeant responded by telling defendant that he had been informed of his rights and that any statement he offered would be used against him. With that, the sergeant turned to leave, but defendant called him back. Over a repeated insistence that his statements could be used against him, defendant said to the officer that he merely pushed LeDuc against the wall. The sergeant quoted defendant as saying, "I never hit him * * Look at my hands. You know when I hit somebody, I hit so hard that I break them." The sergeant testified that he observed that defendant's hands were neither cut nor bruised.

The defendant contends that he was subjected to an in custody interrogation without being fully advised of his rights and, as a result, did not intelligently waive his rights before making the statement. Specifically, he claims that had the sergeant informed him of his right to speak to counsel, he would not have spoken further to the sergeant.

Finding that defendant made the statements on his own initiative and not in response to questioning, the trial justice ruled that the state bore no burden on these facts to show by clear and convincing evidence that defendant understood and intelligently waived his rights. He concluded that the statement was voluntary because, in fact, defendant intended to make an exculpatory statement.

We agree with the trial justice's rulings that neither of defendant's statements was elicited through any form of interrogation that would pose a *Miranda* problem. Concededly, police custody is disconcerting and may in some instances exert a subtle compulsion upon a defendant to incriminate himself. *See State v. Vargus*, 118 R.I. 113, 121, 373 A.2d 150, 154 (1977). But custody

alone, without some police action that might amount to interrogation, does not involve the type of inherent coercion attending custodial interrogation which the Supreme Court in *Miranda* and its progeny sought to mitigate. *Miranda v. Arizona*, 384 U.S. at 457, 86 S.Ct. at 1618, 16 L.Ed.2d at 714; *see Rhode Island v. Innis*, ── U.S. ──, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 308 (1980) (definition of interrogation).

We are in complete agreement with the trial justice that defendant has not shown that the police did anything which even remotely resembles an attempt to induce these statements.[8] In the absence of such evidence, we are constrained to find as the trial justice did; defendant uttered these statements voluntarily.[9]

It is axiomatic under the *Miranda* rule that

"Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda v. Arizona*, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726 (footnote omitted).

Accordingly, the trial justice properly allowed these statements into evidence.

## IV

As a final specification of error, defendant asks us to upset the trial justice's denial of his motion for a new trial. The defendant claims that the trial justice should have accorded great weight to the testimony of Mr. and Mrs. Norman Menard. The Menards happened on this incident while driving on Third Avenue. They testified in turn that they saw two officers and several boys fighting; they saw the officers use nightsticks; they heard defendant tell the officers to leave his brother alone; thereafter, they saw defendant strike the complainant.

When passing on a motion for a new trial, the trial justice sits in independent judgment on the weight and credibility of the material evidence. *State v. Edwards*, R.I., 405 A.2d 1161, 1165 (1979); *State v. DaRocha*, R.I., 397 A.2d 500, 502 (1979). Having thus extracted the credible evidence, the trial justice must reason whether the evidence establishes guilt beyond a reasonable doubt and he must specify the rationale for his decision. *State v. Barnes*, R.I., 409 A.2d 988, 992 (1979); *State v. Tate*, 109 R.I. 586, 589, 288 A.2d 494, 496 (1972).

On review, we shall peruse his ruling to satisfy ourselves that he has sufficiently expounded his reasoning for us to determine that he has not overlooked or misconceived material evidence on a controlling issue or was not otherwise wrong. *State v.*

8. The defendant's claim that the police eavesdropped to obtain his first statement is obviously without merit. Admittedly, the degree of sophistication of the eavesdropping technique employed is not determinative of whether an eavesdrop actually occurred, but we find it difficult to accept on these facts that defendant did not expect that uniformed police officers could hear what he said to his mother. *See State v. Travis*, 116 R.I. 678, 682–83, 360 A.2d 548, 551 (1976). Furthermore, defendant was not in a place where either he or society could demand that his conversation be kept private. *Katz v. United States*, 389 U.S. 347, 361, 88

S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967) (Harlan, J., concurring); *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); *cf. State v. Johnson*, R.I., 414 A.2d 477, 479 (1980) (exposing knife to public view).

9. Parenthetically, we note that *Miranda* applies only to incriminating statements: *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966). The statements in issue here arguably add credence to defendant's claim that he acted in defense of his brother.

*Barnes,* R.I., 409 A.2d at 992; *State v. Edwards,* R.I., 405 A.2d at 1165–66; *State v. DaRocha,* R.I., 397 A.2d at 502.

The trial justice here explicitly considered the evidence, which defendant claims he overlooked, in light of the law of the case contained in his instructions to the jury. He stated that the credible evidence from the officers and the defense witnesses proved that Officer LeDuc was entitled to use force against defendant's brother, Edward. Thus, under the law of the case, he concluded that defendant was not privileged to attack the officer. We find that he did not vacillate in his assessment of the evidence.

The defendant contends, nevertheless, that the trial court should have discounted all of both officers' testimony as incredible because both he and the jury found one portion of it—the claim that defendant struck the officer with a piece of concrete—to be false. He asks us to bind the trial justice, when he weighs the testimony of each witness, to the antique maxim, *falsus in uno, falsus in omnibus.*

In response to the defendant's assertion, we point to *State v. Leavitt,* 103 R.I. 273, 237 A.2d 309 (1968), as dispositive of our opinion of this particular maxim. Although we did not reverse the trial justice who instructed the jury according to this maxim, we made it clear in *Leavitt, supra,* that we were not saying that "such an instruction is advisable, let alone desirable. It serves no useful purpose and should be avoided." *Id.* at 286, 237 A.2d at 317. We agree with Professor Wigmore that, as a rule of law, this maxim is particularly "pernicious * * because there is frequently a misunderstanding of its proper force * * *." 3 A Wigmore, *Evidence* § 1008 at 982 (3d ed. Chadbourn rev. 1970). We decline the defendant's request.

The defendant's appeal is denied and dismissed, and the judgment of conviction is affirmed.

MURRAY, J., did not participate.