UNITED STATES of America, Appellee,

v.

**Francis J. McQUEENEY, Defendant, Appellant.**

UNITED STATES of America, Appellee,

v.

**Richard Rodney PATTERSON, Defendant, Appellant.**

Nos. 81–1558, 81–1559.

United States Court of Appeals, First Circuit.

Argued Feb. 9, 1982.

Decided March 29, 1982.

---

John D. Lynch, Warwick, R. I., and William A. Dimitri, Jr., Providence, R. I., for appellants.

Peter C. Canfield, Atty. Dept. of Justice, with whom Wm. Bradford Reynolds, Asst. Atty. Gen. and Walter W. Barnett, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before CAMPBELL and BREYER, Circuit Judges, and GARRITY,* District Judge.

GARRITY, District Judge.

The sole issue raised by this appeal is whether there was sufficient evidence to sustain the judgments of conviction of the trial court. In January of 1981, Francis J. McQueeney and Richard R. Patterson, undercover policemen with the Providence Police Department, were indicted by a federal grand jury in the District of Rhode Island on five counts, each of which charged both of them with violating 18 U.S.C. §§ 2 and 242.[1] Count I charged the defendants with violating the civil rights of Jeffrey Condon by assaulting him. Counts II through V each charged them with violating the civil rights of one person: Condon's in Count II and those of three of his companions, Richard Schneiderhan, Robert Salesses and Paul Hansen, in Counts III, IV and V, by willfully arresting them without probable cause.

The defendants pleaded not guilty on all counts and were tried jointly before a jury. At the close of the Government's evidence and again at the close of all of the evidence, the defendants moved for judgments of acquittal on all counts. The trial judge denied their motions on both occasions.

On March 25, 1981, the jury returned a verdict finding McQueeney guilty of Counts III, IV and V and Patterson guilty of Counts I, III, IV and V. It acquitted McQueeney of assaulting and otherwise abusing Condon (Count I) and acquitted both McQueeney and Patterson of falsely arresting Condon (Count II). Defendants now appeal. They allege no error in the district court's instructions to the jury. Rather, they challenge the sufficiency of the evidence used to support their convictions.

In evaluating appellants' contentions, our inquiry is a narrow one. We must determine whether, after considering the evidence as a whole, and taking it in the light most favorable to the Government, together with all legitimate inferences to be drawn therefrom, a rational trier of fact could have found guilt beyond a reasonable doubt. *Jackson v. Virginia*, 1979, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *United States v. Patterson*, 1 Cir. 1981, 644 F.2d 890, 893; *United States v. Indelicato*, 1 Cir. 1979, 611 F.2d 376, 384. We conclude that one could. Accordingly, we affirm each of the appellants' convictions.

I. *The Evidence Below*

The parties presented conflicting evidence below and, as a result, the case turned on the credibility of witnesses. Viewed in the light most favorable to the Government, the record establishes the following. At approximately 7:00 p. m. on October 10, 1979, six students at Rhode Island College met for dinner at a restaurant in Providence. At about 8:00 p. m.,

---

* Of the District of Massachusetts, sitting by designation.

1. 18 U.S.C. § 242 provides:
Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges or immunities secured by the Constitution or laws of the United States or to different punishments, pains, or penalties on account of such inhabitant being an alien, or by reason of his color or race, than are prescribed for the punishment of citizens

shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life.
18 U.S.C. § 2 provides:
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

they left the restaurant to return to the college. As they walked to their cars, one of them, Schneiderhan, threw a snowball at one of the other students, Salesses. The snowball missed Salesses but hit a passing car occupied by appellants McQueeney and Patterson. The car turned around and pulled to a stop near the students. McQueeney and Patterson got out of the car and asked who threw the snowball. Although they were on-duty police officers, McQueeney and Patterson were working undercover. They were not in uniform and their car was unmarked. Neither identified himself to any of the students as a police officer.

None of the students admitted to throwing the snowball. One of them, Jeffrey Condon, told the defendants, "It wasn't me, maybe it was one of you guys." McQueeney responded by punching Condon in the face and pushing him back against a truck. In an attempt to protect himself and to subdue McQueeney, Condon, an accomplished wrestler and an assistant wrestling coach at his college, grabbed McQueeney by the legs and, by means of a wrestling maneuver called a double-leg takedown, lifted McQueeney off the ground by his legs and set him down on his back in the street, his legs still in the air. Condon, on his knees, then held McQueeney subdued in this position by maintaining his grasp on McQueeney's legs.

Appellant Patterson approached Condon from the side and began to kick him in an effort to free McQueeney. As he did so, several of the students moved forward to force him to stop. Patterson pulled a gun, pointed it at the students, and told them to get back on the sidewalk or he would blow their heads off. Three of the students, Schneiderhan, Salesses and Paul Hansen, returned to the sidewalk and remained on the scene. One of the other two, Richard James, fled back to the restaurant and telephoned the police. James, who later testified that he was "hysterical", told the police dispatcher where he was and said "something like ... '[T]here's a maniac out on the road. One of them's got a gun, beating up a friend of mine.' "

Patterson hit Condon three times over the head with the gun, yelling to the students on the sidewalk, "Who's going to help your friend now?" Condon cried for help and, dazed, let go of McQueeney. McQueeney grabbed Condon, who was bleeding from the head, and dragged him to the unmarked police car. Either McQueeney or Patterson then reached into the car, pulled out a microphone, and radioed for "backup." This call for backup was the first indication the students had that Patterson and McQueeney were police officers. After the call, Patterson ordered Schneiderhan, Salesses and Hansen to stand against the hood of the car. They did so and Patterson began patting them down. Meanwhile, McQueeney held Condon by his hair in the car, and, while shaking Condon's head, questioned him again about the snowball.

Almost immediately after the call for backup, a number of police cars and vans arrived at the scene. Schneiderhan, Salesses and Hansen were handcuffed, taken to the Providence police station, held for approximately two hours and released. They were not told why they had been arrested nor were they charged. While at the station, Schneiderhan was escorted to the bathroom by McQueeney and Patterson. In the bathroom, Patterson told Schneiderhan that it was "just the two of them" and said "let's see how big a man you are." Schneiderhan replied that his father had taught him better than to "mess" with police officers at. a police station. Before Schneiderhan, Salesses and Hansen were released, Patterson told the three that he had not wanted to "hassle college kids."

Condon was taken from the scene by police officers to a local hospital, where he received medical treatment, including a running suture, for the laceration on his head. He was then taken to the Providence police station, where he was met by Patterson. Patterson told Condon that he was sorry about what had happened, that it had been a big mistake, and that he had not realized that he had been dealing with a college student. Condon further testified:

When I was brought up to the office I was put into the holding cell. I can remember Officer Patterson saying a few things. One of the things that he said was that, he said, "You're pretty tough." He said, "You really handled my partner out there on the street, and he feels intimidated by you because of that, and as a result he wants to press charges against you, but I'm trying to get him to drop the charges." * * * Also at one time, when he came to visit me, he began looking at his hands, and he was kind of shaking his hand, and he said to me that, he said, "Boy, you have a pretty hard head," and I said, "What do you mean?" And he said, "My hand is really swollen from where I hit you on the head." And I said, "You didn't hit me on the head with your hand, you hit me with a bottle." He said, "No, it was my wedding band that cut your head." And I didn't say anything, I just remained silent, and the only other thing that I can really recall about what was said to me is he later came down and he had good news for me, he said that they were going to release me. He also told me that the charges had been reduced to misdemeanor charges, and he said that the reason that I had to be charged was because of the cut on my head.

Condon was charged with two misdemeanor offenses, throwing a projectile at a moving vehicle and simple assault, and released. He pleaded not guilty to each offense, and the charges were eventually dismissed. The day after the incident leading to his arrest, Condon filed a civil rights complaint against the appellants with the F.B.I.[2]

*Count I*

■ Appellant Patterson argues that there was insufficient evidence to sustain the jury's conclusion that he willfully assaulted and otherwise abused Condon (Count I). Specifically, he contends that the Government's evidence establishes that his use of force on Condon was reasonably necessary to arrest Condon and defend McQueeney. We disagree.

As appellant concedes and the trial judge correctly instructed the jury, a police officer may use only such force as is reasonably necessary to effect an arrest or to defend himself or others from bodily harm. *See, e.g., United States v. Stokes,* 5 Cir. 1975, 506 F.2d 771, 776. (The "constitutional right to due process includes . . . a right not to be treated with unreasonable, unnecessary or unprovoked force by those charged by the state with the duty of keeping accused and convicted offenders in custody.") *Accord,* R.I.Gen.Laws § 12–7–8 (". . . [N]o unnecessary or unreasonable force shall be used in making an arrest."); *State v. Gelinas,* 1980, R.I., 417 A.2d 1381, 1385; *State v. Ramsdell,* 1971, 109 R.I. 320, 326, 285 A.2d 399, 404. Considered in the light most favorable to the Government, we find that the evidence was sufficient to support the jury's conclusion that Patterson did not have reason to believe that kicking Condon and hitting him over the head with a gun

---

**2.** At trial, both McQueeney and Patterson took the stand and presented an account of the incident which sharply conflicted with the Government's evidence. Specifically, appellant McQueeney testified that he saw Condon throw a snowball at his car; that when he and his partner first approached the students, he displayed his badge and identified himself as a police officer; and that he placed his hand on Condon's arm and proceeded to place him under arrest when Condon pushed McQueeney's hand away, struck him in the face, and put him on the ground. McQueeney denied dragging Condon to the car.

Appellant Patterson corroborated McQueeney's testimony and testified that he did not have an opportunity to identify himself but had heard and observed McQueeney identify himself as a police officer; that he did not point his gun at the students but only drew it from his holster, held it at his side, and told the students to stand back; that although he used his foot in an effort to assist McQueeney, he did not kick Condon; that he struck Condon over the head once with his hand only; and that he cut Condon's head with a ring he was wearing, not with his gun. Finally, Patterson denied having talked with Condon, Schneiderhan, Salesses or Hansen at the police station about what had happened.

The appellants testified that inconsistencies between their trial testimony and their reported statements to the F.B.I., within a week of the incident, were the result of faulty transcription of their statements by the F.B.I.

three times was necessary either to effect his arrest or to defend himself or McQueeney from bodily harm. Indeed, the evidence was sufficient to justify a conclusion by the jury that Patterson could have effected the arrest of the students, prevented any harm to himself and McQueeney, and entirely avoided the use of force simply by announcing that he and McQueeney were police officers.

*Counts III–V*

Both appellants contend that there was insufficient evidence for the jury to have concluded that they willfully arrested Schneiderhan, Salesses, and Hansen without probable cause. They argue that the Government's own evidence establishes that they had probable cause to arrest the three men for obstructing an officer in the execution of his duty, in violation of § 11–32–1 of the Rhode Island General Laws.[3] We reject appellants' contention.

■ As the district court properly instructed the jury without objection, probable cause to make an arrest exists where there are facts and circumstances within an officer's knowledge that would be sufficient to warrant a prudent person, or one of reasonable caution, in believing that the person to be arrested has committed, is committing, or is about to commit an offense. *See, e.g., Michigan v. DeFillippo,* 1979, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343; *Gerstein v. Pugh,* 1975, 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d

54. *Accord,* R.I.Gen.Laws § 12–7–3; *State v. Firth,* 1980, R.I., 418 A.2d 827, 829; *Palmigiano v. Mullen,* 1977, R.I., 377 A.2d 242, 247. Considered in the light most favorable to the Government, the evidence was sufficient to permit the jury to conclude that neither appellant had any reason to believe that Schneiderhan, Salesses, or Hansen had obstructed or were about to obstruct them in the execution of their duties. On the contrary, an inference may reasonably be drawn from the evidence that both appellants knew that the three students had neither done nor were about to do anything wrong.[4]

■ Even if the evidence relied on by appellants established that the three students were in some way obstructing their activities, it would not be sufficient to establish probable cause. It is well established under Rhode Island law that obstructing an officer in the execution of his duty is an offense only if "the defendant knew the officer to be an officer when he obstructed him." *State v. Maloney,* 12 R.I. 251, 253–54 (1879); *see State v. Berberian,* 1980, R.I., 416 A.2d 127, 129; *State v. Drew,* 1973, 112 R.I. 129, 131, 308 A.2d 516, 518. We hold that the evidence was plainly sufficient to enable the jury to conclude that McQueeney and Patterson knew at the time they arrested the three students that the students were unaware that they were police officers. Appellants concede that they were dressed in civilian clothes and driving

---

3. R.I.Gen.Laws, § 11–32–1 provides:

   *Obstructing an officer in execution of duty.* Every person who shall obstruct any officer, civil, military, or otherwise, including any state, city or town police, sheriff or fireman, while in the execution of his office or duty, shall be imprisoned not exceeding one (1) year or be fined not exceeding five hundred dollars ($500).

   In order to support their theory of probable cause, appellants rely on testimony by the students that when Patterson kicked Condon, they moved toward him in an effort to come to Condon's aid. They also rely on Mr. Schneiderhan's testimony that he "went to jump on" Patterson after Patterson kicked Condon "between the legs" and before Patterson pointed a gun at Schneiderhan's head.

4. Assuming the three students had come to the aid of Condon, they would not necessarily have committed an offense. As already indicated, the evidence supports the jury's conclusion that Patterson used excessive force in arresting Condon. Under Rhode Island law, an arrestee retains the right to defend himself when excessive force is used against him by the police, provided he limits himself to the use of reasonable force in defending himself. *State v. Gelinas, supra* at p. 1385–1386; *State v. Ramsdell, supra* 109 R.I. at p. 327, 285 A.2d 399. Moreover, third-party intervenors who come to the aid of an arrestee stand in the shoes of the arrestee. They may use such force to prevent injury to the person they aid as the arrestee would be justified in using to defend himself from the use of excessive force. *State v. Gelinas, supra* at p. 1385–1386.

an unmarked police car. All three students testified that appellants did not reveal that they were police officers prior to their arrests and that the first indication they had that appellants were police officers came when one of the officers radioed for "back-up."[5]

At oral argument, appellants asserted that an impermissible inconsistency exists between the jury's verdicts finding them both not guilty of count II and guilty of counts III, IV and V which also warrants reversal of their convictions. Specifically, they argued that the jury must have found that appellants had identified themselves as police officers and had probable cause to arrest Schneiderhan, Salesses and Hansen since it acquitted them of willfully arresting Condon without probable cause. This point deserves little comment.

There is no requirement that jury verdicts or judgments of conviction be consistent. *Hamling v. United States*, 1974, 418 U.S. 87, 101, 94 S.Ct. 2887, 2899, 41 L.Ed.2d 590 (and cases cited); *United States v. Previte*, 1 Cir. 1981, 648 F.2d 73, 80; *United States v. Rios Ruiz*, 1 Cir. 1978, 579 F.2d 670. Moreover, we cannot say that the convictions at issue herein are, in fact, inconsistent. The evidence was sufficient to permit the jury to conclude that at the time of the arrest, appellants reasonably believed that it was Condon who threw the snowball, thus giving rise to probable cause to arrest him only.[6] It was also sufficient to enable the jury to conclude that

there was probable cause to arrest only Condon for simple assault on McQueeney. Neither of these conclusions would have required a finding that appellants had identified themselves as police officers prior to the arrests.

In sum, there was sufficient evidence to support the trial court's judgments of conviction against appellant McQueeney on Counts III, IV and V and of appellant Patterson on Counts I, III, IV and V.

*Affirmed.*

---

**5.** In their reply brief, appellants correctly point out that arresting officers need not have all of the evidence required to establish guilt beyond a reasonable doubt in order to have probable cause to arrest. *Draper v. United States*, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. However, this does not change the case. Providence police Captain Jeremiah Murphy was the commander on duty who made the final decision not to charge Schneiderhan, Salesses and Hansen with obstructing an officer on the night that they were arrested. He testified that he made that decision after reading the arrest report and listening to McQueeney's and Patterson's verbal account of the incident because he determined that a "necessary element" was missing from the case. He also testified that police officers are "supposed to know the laws" and agreed that they are expected by the

police department "to make arrests based on legal principles." A rational trier of fact could have inferred from this testimony, and the evidence that appellants had been Providence police officers for six years, that they were aware that an essential element of a § 11–32–1 offense is knowledge on the part of the arrestee that the person whose activities he is obstructing is a police officer.

**6.** Providence police Captain Murphy, *ante*, at p. 115, n.5, testified there was "no question" that there was probable cause to arrest Condon for throwing a missile at a passing vehicle, based on McQueeney's statement in his police report of the incident that he had seen Condon throw a snowball at the vehicle he was operating.