## WILLIAM A. RICE *vs.* RANDALL A. HARRINGTON.

### JULY 2, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Master and Servant.   Assault.*

The proprietor of an amusement resort frequented by large numbers of persons is justified in restraining acts which while not criminal, are offences against good order, but such acts would not thereby become misdemeanors for which police constables employed by such proprietor to assist in maintaining order on the premises, could arrest offenders and while such constables were so employed they were the servants of the proprietor and he was responsible for their acts in the course of their employment.

*(2)   Master and Servant.   Assault.*

Where a visitor at an amusement resort, while committing no offence for which he could be prosecuted, was guilty of disturbing the good order of the place, in an action brought by him charging assault by a police constable employed by the proprietor to assist in maintaining order, the jury might find that what was done by the constable was done within the scope of his employment as the servant of the proprietor.

*(3)   Public Officer as Agent.   Master and Servant.*

An agent of the proprietor of an amusement resort who is also a public officer, acts in a dual capacity, at times as the servant of his employer and at times as an officer of the law. In what capacity he is acting at any time must depend upon the acts done by him.

*(4)   Assault.   Evidence.*

In an action against the proprietor of an amusement resort, for the act of his servant, alleged to have assaulted plaintiff, who was acting in a disorderly manner, the fact that plaintiff asked to be released and signed a statement that he was disorderly and abusive has no relevancy except as evidence of what his conduct had been and the further statement that if he was "let off" "I will not attempt to prosecute," in the circumstances in which the jury might have found it was given, was without consideration and did not bar plaintiff's action.

TRESPASS. Heard on exceptions of both parties. Exceptions overruled except as to damages.

SWEETLAND, J. This action is brought by the plaintiff to recover damages for an alleged assault and battery and for false imprisonment committed by the agents of the defendant.

The case was tried before a justice of the Superior Court sitting with a jury and resulted in a verdict for the plaintiff for two thousand dollars. The defendant duly filed a motion for a new trial. Said motion was granted by the justice, presiding at the trial. In his rescript said justice states as the chief grounds of his decision that in his judgment the fair preponderance of the evidence is that the persons whom the plaintiff claims committed said alleged wrongs were not the agents of the defendant; that the defendant did not ratify their acts; and also that the damages awarded by the jury are excessive.

To this decision of said justice the plaintiff excepted and filed his bill of exceptions containing said exception to the decision of the justice and other exceptions taken during the trial. The defendant also filed a bill of his exceptions taken during the trial and urges that if the decision of said justice granting a new trial is found by us to be erroneous nevertheless he is entitled to a new trial by reason of certain erroneous rulings made by said justice.

On July 11th, 1909, when the matters complained of occurred, the defendant was the proprietor of a very large amusement park known as Rocky Point, situated on the shores of Narragansett Bay, in the town of Warwick, containing many acres of land. Upon the invitation of the defendant large numbers of people came to his resort; at times to the number of thirty thousand people. This park however was the private grounds of the defendant from which he could exclude the public or any individual, and could eject any whose conduct did not conform to his regulations. As a part of the business of operating said park the defendant employed a number of persons to assist in maintaining order on his premises. Some if not all of these persons were police constables of the town of Warwick. On the evening of said July 11, 1909, the plaintiff visited Rocky Point and while there was taken in custody by a man named Henry, who was one of those employed by the defendant to keep order on his premises. While so in custody the

plaintiff claims that he was struck and injured by said Henry and was detained and imprisoned by said Henry. For a part of the time said detention was in the presence of the defendant.

(1)　The important question in the case is whether the said Henry in doing the acts in question was acting within the scope of his employment as the servant of the defendant. We are of the opinion that the great preponderance of the evidence shows that he was. Henry was a police constable of the town of Warwick; but his acts in question were no part of the performance of his duty as such police constable. It was necessary to the business of the defendant that he should so conduct his resort as to make it attractive to his patrons; this required him to restrain some who might become rude and boisterous and thus prevent the annoyance of others.

Many acts which are not criminal but are offences against good manners and good order the defendant would be justified in restraining; and with authority could declare that he would not permit such conduct upon his premises. But such acts would not thereby become misdemeanors for which the police constables in his employ could arrest an offender as for the commission of a crime. It was in the furtherance of this policy that the defendant employed Henry and his associates. In many ways it is apparent that it would be of advantage to the defendant to employ men who were police constables; but while they were thus employed they were his servants and he was responsible for their acts in the course of their employment. It would also be of advantage to the defendant to have upon his premises and in his employ some person or persons with legal authority to make an arrest if a crime should be committed upon his grounds. In so far as such servants of the defendant made an arrest for the commission of a crime they were acting as police constables; but when they were patrolling his grounds and his buildings restraining the boisterousness or the rudeness of his patrons and regulating good order

among them such employees were acting as his agents and not as police officers.

(2)  . The justification which is given for the so-called arrest of the plaintiff is that he and some companions were noisy in one of the buildings into which the defendant invited the patrons of his resort; that when the plaintiff and his companions were ordered to leave, the plaintiff went into the hallway of said building and there commenced to dance and sing; and that Henry then took him into custody. The plaintiff claims that while thus in custody Henry committed an assault upon him and wrongfully detained him. The defendant does not deny that the plaintiff was then for a time deprived of his liberty and that for a part of said time he was under the defendant's observation.

Henry, in forcing the plaintiff to desist from dancing and loud singing, was doing just what the defendant had employed him to do. The plaintiff had committed no offence against the law for which he could be arrested or detained for a longer time than was necessary to eject him from the grounds of Rocky Point. He had committed no offence for which he could be criminally prosecuted.

He had, however, disturbed the good order of the place and had done one of the things which the defendant had employed Henry to prevent and suppress. It might be rightly found by the jury that what Henry did thereafter he was doing within the scope of his employment as the servant of the defendant.

It is generally recognized by courts which have considered the question that an agent, who is also a public officer employed under circumstances similar to the employment of (3) Henry by the defendant, is acting in a dual capacity, at times as the servant of his employer and at times as an officer of the law. The Indiana court in *Dickson* v. *Waldron,* 135 Ind. 507, was considering the acts of an agent who was also a special policeman at the defendant's theatre. It was alleged that this policeman had assaulted a patron of the theatre. The defendant claimed that whatever said police-

man did was while he was suppressing a disturbance in which the plaintiff was engaged. The court held that when so acting he was the agent of the defendant and said: "But it is said that John M. Kiley was a policeman, and therefore appellants are not responsible for his attack upon appellee. Whether, at the time of the injuries complained of, Kiley was acting as a policeman or as agent of appellants must depend upon the acts done by him. Because he was a police officer, it does not follow that all his acts were those of a policeman; and because he was an agent of appellants, it does not follow that all his acts were those of such agent. Even if he were a regular patrolman, called in off the street by appellants or their agents to aid in enforcing the regulations of the theatre, he would, for such purpose, be only an agent of appellants, and for his conduct as such agent, within the scope of his employment, appellants would be responsible. If, however, after entering the theatre he should discover appellee in the act of violating a criminal law of the State or a penal ordinance of the city, and should proceed to arrest him for it, such act of arrest would be that of a police officer."

In *Foster* v. *Grand Rapids Railway Co.*, 140 Mich. 689, the court held: "Where a special deputy sheriff, who was paid by a street railway company, and whose duty it was to preserve order at a resort owned by the company, and ride upon the cars and prevent disturbances, assaulted a passenger on a car in assisting the conductor to eject him for nonpayment of fare, the officer, in so doing, represented not the public, but his employer, and the street railway company was liable." See, also, *Deck* v. *Balt. & Ohio, R. Co.*, 100 Md. 168; *Brill* v. *Eddy*, 115 Mo. 596; *Illinois Steel Co.* v. *Novak*, 84 Ill. App. 641; *McKain* v. *Balt. & Ohio R. Co.*, 65 W. Va. 233.

In the view which we have taken on the question of agency it becomes unnecessary to consider the question of the ratification of the servant's acts by the defendant. It does however appear that while the plaintiff was being held by Henry the defendant was informed of the particulars of the

matter and did not direct Henry to immediately release the plaintiff or to eject him from the Rocky Point grounds; but, .at least, acquiesced in the further restraint of the plaintiff.

We find it unnecessary to treat the other exceptions of the plaintiff.

(4)    We have examined the exceptions of the defendant which have any bearing upon the question of the defendant's liability and find no reversible error in either of them.   The fact that the plaintiff asked to be released and signed a statement that he was disorderly and abusive has no relevancy, except as evidence of what his conduct had been; and the further statement signed by him that "if I am let off I will promise in the future to behave myself and promise I will not attempt to prosecute or make any case out of this trouble," in the circumstances in which the jury might well find it was given was entirely without consideration and does not bar the plaintiff's action.

Said justice found the damages awarded to be excessive; but as he did not approve of the jury's findings upon the question of liability he was justified in not fixing upon any amount to be remitted as excess.

After an examination of the testimony it appears to us that the damages awarded are excessive.   We do not think that the testimony warranted the giving of punitive damages to the plaintiff.   The award appears to us to be too large as compensatory damages.

The exception of the plaintiff to the decision granting a new trial in so far as it relates to the question of liability is sustained.   The other exceptions of the plaintiff are overruled.   All the exceptions of the defendant are overruled.

The case is remitted to the Superior Court with direction for a new trial upon the question of damages alone unless on or before July 10, 1915, the plaintiff shall by remittitur in writing filed in the office of the clerk of the Superior Court remit all of his verdict in excess of $1,000.

*A. B. Crafts,* for plaintiff.
*Wilson, Gardner and Churchill,* for defendant.