STATE

v.

**Richard A. COOK.**

**No. 81–249–C.A.**

Supreme Court of Rhode Island.

Jan: 22, 1982.

---

Dennis J. Roberts II, Atty. Gen., Anthony DelBonis, Sp. Asst. Atty. Gen., for plaintiff.

Aram K. Berberian, Michael Kiselica, Warwick, for defendant.

OPINION

KELLEHER, Justice.

This appeal seems to be nothing but another chapter in the ongoing feud of the defendant, Richard A. Cook (Cook), with various members of the East Providence police department. Earlier this term we denied Cook's appeal from a conviction on a charge that he had obstructed an East Providence police officer while the officer was engaged in the execution of his duties.

This prior offense occurred on October 28, 1978, after Officer John J. Lynch, Jr., had stopped Cook's son for a violation of the motor vehicle code. When Cook arrived on the scene, he shouted obscenities at Officer Lynch and Officer Richard J. Holland, who was also present. He not only bumped Officer Holland as Officer Lynch was filling out the violation citation but also grabbed Officer Lynch's arm when Lynch attempted to deliver the completed citation to Cook's son. Cook concluded his tour de force on this day by taking the citation from his son and tearing it up. The main thrust of Cook's defense was his claim that although Officer Lynch was in uniform at the time of the incident, he was not really a police officer because the oath administered to Lynch by the East Providence city manager was a nullity as city managers, in Cook's opinion, were not authorized to administer oaths.

Two days after the citation confrontation Officer Holland, working the 4 p.m. to 12 p.m. shift, received a radio message to proceed to the Providence County Courthouse and there pick up a fellow officer who had testified that day at a Superior Court trial. Upon receipt of this directive, Holland proceeded to interstate Route 195 and traveled westerly on that highway to the South Main Street exit ramp. Once he was on South Main Street, Officer Holland traveled in a northerly direction. Shortly after his entrance onto South Main Street, Holland observed a red sports car that, in his words, "pulled up on the left and swerved over and cut me off." The red car then "proceeded off," and Holland "proceeded down" the street.

When Holland was approximately fifty to seventy-five feet away from the Hopkins Street side of the courthouse, the red car once again came up on the officer's left, pulled in front of his vehicle, and stopped. Holland was then required to bring his cruiser to a halt. The red car's driver alighted from his vehicle and walked over to the driver's side of the cruiser. Holland recognized the driver; it was Cook, who, addressing Holland through an open window, asked the officer what he was doing in Providence. When Holland responded that his business in Providence was none of Cook's business, Cook uttered "some profanities," some of which were employed in concert with "different names" he called the officer.

Holland then told Cook to return to his car and depart because traffic was becoming congested. Cook turned as if he were going to return to the red car; suddenly he spun around, leveled a punch through the open window, and hit Holland in the face. The force of the blow broke the sun glasses Holland was wearing and cut the left side of the officer's nose.

At this point, Holland's fellow officer, who had been waiting in front of the courthouse on the South Main Street side, appeared on the scene and restrained Cook. In time the Providence police took over, and less than nine months later Cook was in the Providence County Courthouse on trial on a charge contained in a criminal information that alleged that he had, in violation of G.L. 1956 (1981 Reenactment) § 11–5–5, knowingly and willfully struck a uniformed police officer while the officer was engaged in the performance of his duties.

Although Cook at trial denied ever having touched the officer, on the appellate level his defense is more direct and simple. According to Cook, at the time of the South

Main Street encounter, Holland was not acting in the performance of his duties because providing taxi service for a fellow officer is not part of a police officer's responsibility. Thus, if he, Cook, were the East Providence police chief, any officer required to come to the courthouse and testify would have to return to headquarters by way of a public transit authority bus, or a taxi, or the officer's personal vehicle.

In espousing this position, Cook, for all we know, might be recalling the days of his early youth when one's leisure time could be occupied playing such games as "cops and robbers." However, we would remind him of the sagacious comment made by Mr. Justice Rehnquist when he observed that oftentimes municipal and state police are called upon to perform "community caretaking functions" that have nothing to do with the apprehension and conviction of alleged criminals. *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 714–15 (1973). Any police officer at any given time may perform the responsibilities of the office by acting as a domestic-relations counselor in an attempt to reconcile two belligerent spouses who at some prior time had solemnly promised to love and honor each other, or as a midwife to a newcomer to this planet who cannot delay his or her appearance until the cruiser makes it to the hospital, or as a sympathetic emissary who has the unpleasant task of informing some citizen of the loss of a loved one, or even as a taker of measurements or the preparer of accident reports that may prove of value solely to some insurance adjuster. The incidents to which we have just alluded are but a few of the many varied daily tasks that may be performed by anyone who joins a police department. ■ When the General Assembly sought to give some protection against bodily harm to the uniformed officer performing the duties of the office, we do not believe that the scope of this protection was to be restricted in such a manner as Cook would have it. The Legislature used the term "duty" in a broad sense, that is, what an officer should do simply because he or she is an officer. *See United States v. Reid*, 517 F.2d 953, 964 (2d Cir. 1975). We are of the opinion that an officer is occupied in the exercise of duty when he or she is carrying out official orders.

■ As Officer Holland drove toward the Providence County Courthouse in obedience to his superior's command, he was engaged in the performance of his duties. The broad scope of statutory relief envisioned by the Legislature with its enactment of § 11–5–5 affords no basis for Cook's reliance on the holding of *Page v. Staples*, 13 R.I. 306 (1881), where this court ruled that a Providence County sheriff who took a prisoner to the Providence County jail by way of Kent County lost his authority to retain custody of the prisoner once the two crossed into Kent County. Notwithstanding the rule of *Page*, when a police officer, in compliance with the order of his superior officer, leaves the municipality of his or her employer, the officer still retains the protection afforded by § 11–5–5.

Cook, by his continuous confrontation with Officer Holland and his colleague, gives a continued ring of truth to Gilbert and Sullivan's prophetic lament: "When constabulary duty's to be done—The policeman's lot is not a happy one." However, this distinguished duo further caught the constabulary's sergeant in song as follows: "When a felon's not engaged in his employment—Or maturing his felonious little plans—His capacity for innocent enjoyment—Is just as great as any honest man's." [1] Hopefully, the time has come when Cook will cease hostilities and turn to matters of "innocent enjoyment."

The defendant's appeal is denied and dismissed, and the judgment of conviction appealed from is affirmed.

---

1. The Pirates of Penzance, act II.