**STATE**

v.

**Edward BOTELHO.**

No. 81–542–C.A.

Supreme Court of Rhode Island.

May 12, 1983.

---

Dennis J. Roberts II, Atty. Gen., Anthony E. DelBonis, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Janice M. Weisfeld, Asst. Public Defender, Barbara Hurst, Chief Appellate Atty., Providence, for defendant.

## OPINION

SHEA, Justice.

A criminal information filed against Edward Botelho (Botelho) charged him with knowingly and wilfully striking Arthur Brunelle, who was a uniformed police officer engaged in the performance of his duties, in violation of G.L.1956 (1969 Reenactment) § 11–5–5.[1] A Superior Court jury returned a guilty verdict, and Botelho now appeals. In support of his appeal, Botelho makes the following claims: (1) the trial justice erred by ruling that Officer Brunelle was engaged in the performance of his duties at the time of the assault, and (2) the trial justice erred in refusing to give the jury an instruction on self-defense. We affirm.

On March 23, 1980, Officer Arthur Brunelle, a member of the Pawtucket police

---

1. This section is now contained in the 1981 Reenactment. General Laws 1956 (1981 Reenactment) § 11–5–5. Since 1969 the Legislature has expanded the scope of this section. In 1973 the section was amended to encompass members of the committing squad of the department of corrections, P.L.1973, ch. 66, § 1. In 1979 the section was amended to encompass sheriffs, P.L.1979, ch. 249, § 1. In 1980 it was amended to encompass members of the campus security forces of state colleges and universities, P.L. 1980, ch. 305, § 1.

department, was assigned to a "paid detail" at the Howard Johnson's restaurant on George Street in Pawtucket. In the city of Pawtucket, a police officer may request a paid detail on the days the department does not schedule him to work a regular shift. The police department assigns these paid details on a rotating basis. While working on a paid detail, an officer must wear his uniform and the police department considers him "on duty." Although Officer Brunelle, while on the paid detail in question, was paid by Howard Johnson's management, he retained the same benefits as accorded to him when he worked his regular duty hours.

In the early morning hours of March 23, 1980, Botelho entered the Howard Johnson's restaurant where Officer Brunelle was stationed. He sat down at a booth occupied by three of his friends. Two women were seated at an adjacent booth. Shortly after Botelho arrived, Donna Thompson (Thompson), an employee of Howard Johnson's, noticed that someone from Botelho's table had thrown a knife that had landed in a glass on the adjacent table. Thompson approached Botelho's table admonishing him and his friends to "knock it off." Thompson then went to a different dining room. Immediately thereafter, she heard a crashing noise that came from the area near Botelho's table and when she investigated she found a breakfast plate on the floor. She also learned that one of Botelho's friends, identified only as "Manny," had decided to dine with the two women much against their wishes.

Thompson told Officer Brunelle to remove Manny from the restaurant because he was bothering the women. Officer Brunelle complied with the request and escorted Manny outside. Once there, Manny repeatedly told the officer that he wanted to go back inside. When Officer Brunelle refused to let him return, Manny attempted to force his way back inside. Officer Brunelle then told Manny, "You're going to leave, or I'll place you under arrest." Moments later, a waitress came outside and asked the officer to return to the restaurant because the manager was having problems with Botelho and his friends. He had barely re-entered the restaurant when he met these men in the entrance area between the inner and outer doors. Manny had followed the officer inside. Officer Brunelle turned and attempted to push Manny back outside. Officer Brunelle testified that Botelho then slapped him from behind on both ears, hard enough to cause a ringing sensation. Officer Brunelle turned, grabbed Botelho by the shirt, ripping it in the process, and pushed him out the door. At the same time Officer Brunelle was slapped by one of Botelho's friends. Botelho, apparently irate over his ripped shirt, started yelling obscenities at the officer. He then assumed a karate stance and kicked Officer Brunelle in the groin.

Immediately thereafter, Botelho ran into the parking lot, encouraging Officer Brunelle to "come on" and saying to his friends, "[N]ow we have him." Officer Brunelle got up and told Botelho to stay there because he was under arrest. Botelho, however, then fled.

On the afternoon of March 23, 1980, about thirteen hours after the incident, Officer Brunelle, while off duty, saw Botelho with several other individuals outside Joe's Lounge in Pawtucket. Botelho was again in a karate stance, apparently giving a demonstration to his audience, striking at a telephone pole with his foot. Officer Brunelle contacted the Pawtucket police headquarters. The department dispatched officers to arrest Botelho. When the officers arrived, Botelho was no longer outside. The officers then entered Joe's Lounge. When Botelho saw the officers, he fled to the ladies room where he was found, hiding in a stall, and arrested.

As a result of his injury, Officer Brunelle was forced to undergo a hernia operation and was out of work for eight weeks.

After the state rested, Botelho made a motion for a judgment of acquittal. He argued that Officer Brunelle was not engaged in the performance of his duties as a

police officer at the time of the Howard Johnson's incident but rather was only a part-time security guard employed by the restaurant. The motion was denied.

On appeal Botelho claims the trial justice erred by denying the motion for a judgment of acquittal. He relies principally on the case of *Rice v. Harrington,* 38 R.I. 47, 94 A. 736 (1915). In that case a patron of Rocky Point Amusement Park sought to hold the park liable for damages arising out of a tort committed by a park security officer. The officer was also a police constable of the town of Warwick. This court held that when the tort occurred, the security officer was acting as the agent of Rocky Point Park and not as a police officer.

The case at bar differs from *Rice v. Harrington, supra. Rice* involved the civil misconduct of a security officer and was decided on master-servant principles. This case involves a violation of § 11–5–5, a criminal statute that was enacted in 1965, fifty years after the *Rice* decision. Section 11–5–5 provides, "Any person who shall knowingly and wilfully strike a uniformed member of the * * * city or town police forces * * * causing bodily injury while the member is engaged in the performance of his duty shall be deemed to have committed a felony, and shall be imprisoned not exceeding three (3) years or fined not exceeding fifteen hundred dollars ($1,500) or both." No such legislation was involved in *Rice.* Furthermore, § 11–5–5 requires that the assault be on *uniformed* officers.

The *Rice* opinion does not indicate whether the constable wore his police uniform while he worked at Rocky Point as Officer Brunelle did while he worked at Howard Johnson's. Also, it appears that Rocky Point hired its security guards without any assistance of or cooperation with the Warwick police department. In the case before us, the Pawtucket police department assigned officers to Howard Johnson's on a rotating basis. The police department considered these officers "on duty" and provided them with the full range of benefits during these details. We are not faced with a situation, as in *Rice,* in which a police officer is directly hired for part-time security work.

■ It is clear from the record that Officer Brunelle was a fully uniformed police officer acting within the scope of his employment during the time he spent at Howard Johnson's.

By enacting § 11–5–5:

"[T]he General Assembly sought to give some protection against bodily harm to the uniformed officer performing the duties of the office * * *. The Legislature used the term 'duty' in a broad sense, that is, what an officer should do simply because he or she is an officer." *State v. Cook,* R.I., 440 A.2d 137, 139 (1982).

Officer Brunelle was assigned to Howard Johnson's by his superior officers. While there, an unruly customer persisted in bothering two female patrons. When the officer removed this patron, unquestionably he was doing "what an officer should do simply because he or she is an officer." *Id.*

■ Botelho further argues that the trial justice erred in refusing to give an instruction on self-defense. A defendant has a right to request jury instructions on the law applicable to the issues of fact raised by the evidence. *State v. Gelinas,* R.I., 417 A.2d 1381, 1384 (1980). However, "[t]he jury's attention should not be directed to various propositions of law unless the record contains evidence which supports and requires it." *State v. Infantolino,* 116 R.I. 303, 307, 355 A.2d 722, 724–25 (1976).

■ A citizen must submit to the authority of a police officer. *State v. Duffy,* R.I., 441 A.2d 524, 525 (1982). If the officer uses reasonable force, the application of the principle of self-defense is not warranted and the felony provisions of § 11–5–5 apply. *State v. Ramsdell,* 109 R.I. 320, 327, 285 A.2d 399, 404 (1971). However, when a police officer engages in excessive force, the citizen maintains his right of self-defense. *Id.* at 327, 285 A.2d at 404. Once the danger is past, the citizen cannot continue his

defensive measures. *State v. Mulvihill,* 57 N.J. 151, 157–58, 270 A.2d 277, 280 (1970). Basically, this rule requires that the citizen's conduct be reasonable in light of all the circumstances apparent to him at the moment. *Id.* A citizen's right to defend against excessive force does not depend on an arrest. *See State v. Ramsdell,* 109 R.I. at 323–24, 285 A.2d at 402. In fact, in *Ramsdell,* the police officer was not attempting to make an arrest.

▪ Here, there is no evidence that Officer Brunelle used excessive force. According to Botelho's own testimony, Officer Brunelle merely grabbed him and pushed him out the door, ripping his shirt in the process. Botelho admitted that after his shirt was ripped, he pushed the officer in the back of the head. He denied kicking Officer Brunelle. The evidence indicates that Officer Brunelle, not Botelho, was in danger. Officer Brunelle had to deal with four unruly individuals who pushed, slapped, grabbed, and kicked. The record indicates that Botelho was the aggressor. He could have left Howard Johnson's, but instead he repeatedly harassed and brutally assaulted Officer Brunelle.

For the foregoing reasons, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of this case are remanded to the Superior Court.

BEVILACQUA, C.J., and KELLEHER, WEISBERGER, MURRAY and SHEA, JJ. concur.