**James V. BARROWS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–3773.**

Court of Appeals of Alaska.

July 26, 1991.

---

to be doing something that ... seemed suspicious". Villalobos proceeded to the area described by his fellow officer and observed a van legally parked on the side of the road.

According to Villalobos, the road where the van was parked, although open to the public, was not a heavily traveled route; it was uncommon to see people parked there. Villalobos testified that he routinely makes contact with people observed in that area "just to talk to them" and "make [them] aware that there are certain laws that they have to abide by". Villalobos testified that people have been known to use drugs and discharge firearms in that area and that minors frequently consume alcohol there. Villalobos also testified that he believed the vehicle "could have been broke[n] down". He conceded, however, that there were "numerous reasons" why the vehicle might have been there.

Acting on these concerns, Villalobos stopped his patrol car about 20 feet away from the van. As he described it, when he walked toward the van he observed a female passenger; this woman "kept disappearing" in the back of the van. The driver, a male, "was going back and forth where I couldn't see him for a while and then I could see him for a while." Villalobos was aware that there had been sexual assaults in the area and he became concerned about the safety of the female passenger.

As he got closer, Villalobos observed that the woman was pregnant and extremely intoxicated. Villalobos asked the couple "how [they were] doing", and he asked the woman her name, which she provided. After determining that the woman was not in any danger, Villalobos asked Barrows "if he'd mind" showing identification. Barrows responded that he had no identifying papers with him. Villalobos then asked Barrows his name. Barrows identified himself. Villalobos ran a computer check on the name and learned that Barrows's license was revoked.

Villalobos confronted Barrows with this information and warned him that, if he drove, he would be placed under arrest.

Michael S. Pettit, Asst. Public Defender, Fairbanks and John B. Salemi, Public Defender, Anchorage, for appellant.

Gayle L. Garrigues, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

James V. Barrows pleaded no contest to a charge of driving while his license was revoked, AS 28.15.291(a), reserving the right to appeal the denial of his motion to suppress evidence arising from what he asserted was an illegal investigatory stop. *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). We affirm.

At the evidentiary hearing on the motion to suppress, Fairbanks Airport Security Officer Moses Villalobos testified that he received a radio message from another officer that there was "a vehicle parked in an area where vehicles aren't normally parked", and that the occupants "appeared

Villalobos offered to call someone to drive Barrows home, but Barrows told Villalobos that his brother-in-law, who was out walking in the woods, would return to the car and drive it. Villalobos then left the scene.

Shortly thereafter, Villalobos saw Barrows driving the van. Villalobos stopped Barrows and issued him a citation for driving while his license was revoked.

Barrows also testified at the evidentiary hearing. His version of events was slightly different. According to Barrows, when Villalobos asked him for his name, Villalobos told Barrows that he would go to jail if he did not reveal his identity.[1]

District Court Judge Jane F. Kauvar, who heard the suppression motion, ruled that Villalobos had been entitled to make contact with the occupants of the van to "make sure ... there [was not] a problem" and "to make sure ... the woman [was] okay." Regarding Villalobos's request for Barrows's name, and the officer's subsequent computer check of the status of Barrows's license, Judge Kauvar ruled:

> I don't know if Villalobos had a right to necessarily demand that Barrows give his name.... But he asked him his name, and Mr. Barrows gave him his name. And I don't think there was anything illegal then about [Villalobos's] just checking to see if the license was revoked. Once [Villalobos] knew [Barrows] had a revoked license, I think he had a right to stop him when he saw him driving.

In making this ruling, Judge Kauvar implicitly rejected Barrows's claim that Villalobos had threatened him with jail if did not identify himself. This finding is not clearly erroneous. In *Van Cleve v. State*, 649 P.2d 972, 976 n. 6 (Alaska App.1982), we noted that "great deference is afforded the trier of fact's resolution of ... testimonial conflicts because of its ability to observe the witnesses' demeanor." Moreover, in his brief to this court, Barrows does not renew the claim of coercion; while he characterizes Villalobos's request for identifica-

tion as a "demand", Barrows does not assert that it was accompanied by a threat.

Nevertheless, relying on *Ozhuwan v. State*, 786 P.2d 918 (Alaska App.1990), Barrows contends that he was subjected to an illegal investigatory stop when Villalobos asked him for identification. Barrows asserts that Villalobos, by making this request, in effect instructed Barrows to "stay put" while the officer ran the computer check. Barrows further contends that Villalobos no longer had any reasonable suspicion of criminal activity at the time he made the request for identification.

■ But not all encounters between the police and private citizens are investigative stops amounting to seizures for Fourth Amendment purposes. *Waring v. State*, 670 P.2d 357, 363 (Alaska 1983). In *Waring*, the supreme court explained the difference between a permissible "encounter" and a "seizure":

> Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.... Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification.

670 P.2d at 363, quoting *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983).

■ A Fourth Amendment seizure occurs only when an officer, by means of physical force or a show of authority, in some way restrains the liberty of a citizen. A person is "seized" within the meaning of the Fourth Amendment only if, in light of all the circumstances, a reasonable person would believe that he or she was not free to leave or to break off the questioning.

---

1. Barrows also testified that he did no driving on the date in question. Judge Kauvar found that Barrows was driving at the time of the

investigatory stop. This finding is not clearly erroneous; in fact, Barrows concedes on appeal that he was driving.

*Waring v. State,* 670 P.2d at 364. Elaborating this standard, the Alaska Supreme Court has stated:

> We recognize that, upon being confronted by a police officer, the average person would feel an obligation to respond to the officer's questions and not to walk away. Such a confrontation, therefore, will amount to a seizure only if the officer added to those inherent pressures by engaging in conduct which a reasonable man would view as threatening or offensive even if coming from another private citizen.... The critical inquiry would be whether the policeman, although perhaps making inquiries which a private citizen would not be expected to make, has otherwise conducted himself in a manner consistent with what would be viewed as a non-offensive contact if it occurred between two ordinary citizens.

670 P.2d at 364, quoting *W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment* (1st ed. 1978), § 9.2, Vol. 3, pp. 53–54.

■ Applying this test to the facts found by the trial court, we conclude that Barrows was not "seized" when Villalobos approached his van, questioned him briefly, and requested identification. The encounter between Villalobos and Barrows took place on a public road. Villalobos did not activate his overhead lights or otherwise instruct Barrows to stop; he did not position his vehicle so as to block Barrows's departure. Villalobos merely approached the van, which was already parked on the side of the road, and put questions to Barrows and his companion in a conversational manner. Villalobos did not display a weapon or make any threatening remarks or gestures. Villalobos's request that Barrows identify himself was not accompanied by any threat or promise of official retaliation if he refused.

A reasonable person in Barrows's position would have felt free to refuse to comply with this request. We recognize, as the supreme court pointed out in *Waring v. State,* that the average person may feel a certain degree of obligation to respond to an officer's questions. But this inherent pressure to respond to an official in uniform does not convert the contact into a seizure for Fourth Amendment purposes. *See also Pooley v. State,* 705 P.2d 1293, 1306 (Alaska App.1985), holding that a "mere request for identification does not automatically render the stop a seizure".

Courts from other jurisdictions, confronted with circumstances similar to Barrows's case, have concluded that the officer's actions did not amount to a seizure. In *Atchley v. State,* 393 So.2d 1034, 1038–44 (Ala. Crim.App.1981), the court ruled that no seizure occurred when the police approached the sleeping occupant of a legally parked car, asked him for identification, and questioned him to see if he "was having some kind of problem". In *Purce v. United States,* 482 A.2d 772, 774–77 (D.C.1984), the court held that no seizure occurred when the police drove through the parking area of a public park to see if "everything was okay", observed a parked car with a sleeping male, learned from their dispatcher that the registered owner of the car was female, and then questioned the defendant about "what he was doing there" and requested that he show them identification. In *Lightbourne v. State,* 438 So.2d 380, 387–88 (Fla.1983), the court ruled that no seizure occurred when the police, in response to a call regarding a "suspicious car", approached a parked car, asked the occupant to identify himself and explain why he was there, and then ran a records check on his car and his name. And in *United States v. Elmore,* 595 F.2d 1036 (5th Cir.1979), the court held that no seizure occurred when the police briefly questioned a person seated at an airport and requested, but did not demand, to see identification. *See also W. LaFave, Search and Seizure* (2nd ed. 1987), § 9.2(h), Vol. 3, pp. 408–09, supporting the proposition that the conduct of police in merely approaching and questioning a person in a parked vehicle in a public place does not constitute a seizure.

Under these authorities, we are satisfied that Barrows was not subjected to an investigatory stop when Villalobos approached him and asked him to identify himself. Accordingly, the judgement of the district court is AFFIRMED.