Joshua **MELSON**, Appellant,

v.

**MUNICIPALITY OF ANCHORAGE,**
Appellee.

No. A–8149.

Court of Appeals of Alaska.

Dec. 13, 2002.

---

Benjamin I. Whipple, Palmer, for Appellant.

John E. McConnaughy, III, Assistant Municipal Prosecutor, and William A. Greene, Municipal Attorney, Anchorage, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

In previous decisions, the Alaska Supreme Court and this Court have held that a person is not authorized to use force to resist police officers who are making an unlawful arrest (unless the officers use excessive force when making the arrest). We now hold that this same rule applies when police officers use force to detain a person during an investigative stop.

### Underlying facts

At 8:00 a.m. on June 17, 2001, Anchorage police officers attempted to question Joshua Melson about an assault that had allegedly occurred in his apartment building around 2:00 a.m. that same morning. Melson denied knowledge of the assault, asserting that he had only recently returned to his apartment. The officers knew that this was not true, for they had seen Melson peeking out of his window when they came to investigate the assault four and a half hours earlier. The officers pressed Melson to explain this inconsistency. What happened next was a matter of dispute at Melson's trial.

According to the testimony of Officer Shawn Case, Melson told the officers "fuck you", and then he turned to go back into his apartment. Case told Melson to "hold on", and he grabbed Melson's wrist. Melson lunged through the door, back into the apartment. At the same time, someone else in the apartment slammed the door on Case's arm. With Case's arm caught in the door, Melson and his unseen helper continued to push on the door. Fortunately, Officer Case's partner ran at the door and was able to push it open just enough for Officer Case to insert his baton into the opening. Using the baton as a crowbar, Case was able to free his arm.

Case and his partner then left to get a search warrant for the apartment.

Melson gave a different account of events. He testified that Case and his partner asked him if they could talk with the other people in the apartment. Melson refused to allow the officers into the apartment, but he agreed to bring the other people outside. Melson turned and had already re-entered the apartment when Case grabbed his arm and told him to stop. Melson testified that he broke free from Case's grip and slammed the apartment door shut. According to Melson, Case's arm was never caught in the door. He agreed that Case had tried to force the door open with his baton, but Melson claimed that Case was trying to effect an unlawful entry, not save himself from injury.

In any event, the officers obtained the warrant, returned to Melson's apartment, and arrested him. Following a jury trial, Melson was convicted of two municipal offenses: assault upon a police officer, and resisting or interfering with a police investigation by fleeing after having been told to stop.[1]

At trial, Melson claimed that the officers had unlawfully tried to detain him and had unlawfully attempted to enter his home. Melson further claimed that he had the right to use non-deadly force to resist the officers' efforts. Melson asked District Court Judge Nancy J. Nolan to instruct the jury on Melson's right to use non-deadly force in defense of self and property, and to instruct the jury that Melson could not be convicted of resisting or interfering with a police investigation if he was exercising his rights under the Fourth and Fifth Amendments to the United States Constitution. Judge Nolan refused to give these instructions. Melson challenges the judge's decision on appeal.

*A person has no right to use force to resist an identified police officer who is using non-excessive force to detain that person at the scene of an investigative stop*

■ Thirty years ago, in *Miller v. State*, the Alaska Supreme Court held that a person has no right to use force to resist an unlawful arrest by police officers (unless the arresters are not recognizable as police officers, or unless the officers use excessive force to effect the arrest).[2] That ruling is now codified in AS 11.81.400(a).[3] But Melson argues that this rule should not apply to his case.

First, Melson contends that Officer Case had no reasonable suspicion to justify his temporary detention of Melson, much less probable cause to arrest him. But in the district court, Melson's attorney affirmatively conceded the opposite. After Judge Nolan repeatedly asked Melson's attorney whether he conceded that the officers had reasonable suspicion under *Coleman v. State*[4] to conduct an investigative stop of Melson, Melson's attorney answered "yes". Melson must abide by that concession now.[5]

In the alternative, Melson argues that the *Miller* limitation on a person's right to use force to resist an arrest does not apply to investigative stops. That is, because Officer Case was attempting to detain Melson temporarily rather than arrest him, Melson asserts that he had the right to resist the officer by the use of non-deadly force.

In *Miller*, the supreme court explained that a person's right to forcibly resist arrest—even an unlawful arrest—should be restricted because

> the legality of a peaceful arrest should be determined by courts of law and not through a trial by battle in the streets. It is not too much to ask that one believing

1. Anchorage Municipal Code § 8.10.010(D) and § 8.30.010(A)(4), respectively.

2. 462 P.2d 421, 426–27 & n. 4 (Alaska 1969). See *Gray v. State*, 463 P.2d 897, 907–09 (Alaska 1970) (recognizing that an arrestee retains the right to resist officers who use excessive force).

3. This statute reads, in pertinent part: "A person may not use force to resist personal arrest or interfere with the arrest of another by a peace

officer ..., whether the arrest is lawful or unlawful, unless ... the force used by the peace officer exceeds that allowed by AS 11.81.370."

4. 553 P.2d 40 (Alaska 1976).

5. See *Moreau v. State*, 588 P.2d 275, 279–280 (Alaska 1978) (holding that Fourth Amendment claims can not be raised for the first time on appeal).

himself unlawfully arrested should submit to the officer and thereafter seek his legal remedies in court. Such a rule helps to relieve the threat of physical harm to officers who in good faith but mistakenly perform an arrest, as well as to minimize harm to innocent bystanders.

*Miller,* 462 P.2d at 427.

These policy considerations apply just as strongly to investigative stops. Indeed, in *Elson v. State,* the supreme court held that a suspect could not use force to resist a police officer's pat-down search for weapons, a common aspect of investigative stops.[6] Although the defendant in *Elson* was under arrest, the supreme court phrased its holding in broader terms:

> We ... conclude that the rule we adopted in *Miller* is applicable to cases involving physical resistance to a search by the police. Thus, we hold that a private citizen may not use force to resist a peaceful search by one he knows or has good reason to believe is an authorized police officer performing his duties, regardless of whether the search is ultimately determined to be illegal.

*Elson,* 659 P.2d at 1200.

Other jurisdictions that restrict a person's right to use force to resist arrest apply the same rule to investigative stops.[7] Melson offers no convincing rationale for distinguishing investigative stops from arrests on this point.

We therefore hold that a person may not use force to resist temporary detention by identified police officers who are conducting an investigative stop (unless the officers use excessive force). Melson concedes that Case did not use excessive force by grabbing his arm. We thus conclude that Judge Nolan could properly decline to give Melson's proposed instruction on his asserted right to use force to resist the temporary detention of an investigative stop.

*A person has no right to assault an identified police officer who has entered their home, even if the person knows or believes that the officer's entry is illegal, if the person has reason to believe that the officer is engaged in official duties and if the officer does not use excessive force*

 Melson also argues that, even if people are generally not entitled to forcibly resist an investigative stop, Melson nevertheless was entitled to use force against Officer Case because Case reached through the apartment door, thereby unlawfully intruding into Melson's home.

 We assume, for purposes of argument, that Case was not entitled to reach through Melson's apartment door to detain Melson in connection with the investigative stop.[8] But even if Case's action amounted to a trespass, Melson still would not be authorized to assault Case to end the trespass.

In *Napageak v. State,* we held that a person can not forcibly resist an identified police officer's intrusion into their home on official business, even if the intrusion is illegal.[9] (We also decided a related issue in *Jurco v. State:* we held that a person is not entitled to use force to resist an identified police officer who is attempting to take possession of their property pursuant to a court decree, even if

---

**6.** 659 P.2d 1195, 1200 (Alaska 1983).

**7.** *See, e.g., In re Joseph F.,* 85 Cal.App.4th 975, 102 Cal.Rptr.2d 641, 652 (2000); *Evans v. City of Bakersfield,* 22 Cal.App.4th 321, 27 Cal.Rptr.2d 406, 411–12 (1994); *State v. Diedrich,* 410 N.W.2d 20, 23 (Minn.App.1987); *State v. Clark,* 8 Neb.App. 936, 605 N.W.2d 145, 149 (2000); *State v. Ramsdell,* 109 R.I. 320, 285 A.2d 399, 402–04 (1971); *American Fork City v. Pena–Flores,* 14 P.3d 698, 700–01 (Utah App.2000); *State v. Cormier,* 100 Wash.App. 457, 997 P.2d 950, 953–54 (2000).

**8.** A police officer normally must obtain a warrant before entering a residence to make an arrest. *See Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Johnson v. State,* 662 P.2d 981, 984 (Alaska App.1983). However, there is a "hot pursuit" exception to this warrant requirement. *See United States v. Santana,* 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–10, 49 L.Ed.2d 300 (1976); *United States v. Rohrig,* 98 F.3d 1506, 1515–16 (6th Cir.1996); *Hegarty v. Somerset County,* 53 F.3d 1367, 1374 (1st Cir. 1995).

**9.** 729 P.2d 893, 895 (Alaska App.1986).

there is reason to believe that the decree was issued illegally.[10])

*Napageak* provides the rule that governs Melson's case. Even assuming that Case trespassed into Melson's apartment by reaching through the threshold to grab Melson's arm, Melson was not entitled to assault the officer by slamming the door on his arm.

*Melson's proposed jury instruction concerning the interplay between a person's rights under the Fourth and Fifth Amendments and the municipal offense of resisting or interfering with a police investigation*

■ Melson was charged not only with assault but also with the separate offense of resisting or interfering with a police investigation "by fleeing after having been told to stop", AMC § 8.30.010(A)(4). At trial, Melson argued that this section of the Anchorage Municipal Code is overbroad, in that it penalizes some conduct that is protected by the Fourth and Fifth Amendments to the United States Constitution. Specifically, Melson argued that no one can be subjected to criminal penalties for "resisting" or "interfering with" a police investigation if the act of "resistance" or "interference" consists of insisting that the police have a justifiable reason before they detain a citizen, or insisting that the police obtain a warrant before they enter a person's home, or asserting the right to refuse to answer police questions.

Melson is correct that the government can not attach criminal penalties to a person's assertion of rights protected by the Fourth and Fifth Amendments. But AMC § 8.30.010(A)(4) does not criminalize the generic act of "resisting" or "interfering with" a police investigation. Rather, the ordinance declares that the offense consists of

> intentionally, recklessly, or knowingly delay[ing] or obstruct[ing] a police officer's active investigation of a crime by fleeing after having been told to stop.

In other words, the *actus reus* of this offense is the act of flight.

In addition to the act of flight, the Municipality must prove that the defendant's flight occurred after the defendant was told to stop. Implicitly, the Municipality must further prove that the defendant was aware of the officer's command to stop. Compare *Kimoktoak v. State*, 584 P.2d 25, 29–31 (Alaska 1978), where the supreme court held that a defendant could not be convicted of leaving the scene of an accident without proof that the defendant was aware that an accident had occurred. Moreover, the Municipality must prove that the defendant acted at least recklessly (if not knowingly or intentionally) with regard to the possibility that their flight would delay or obstruct a police officer's active investigation of a crime, and must also prove that the defendant's flight did in fact delay or obstruct an active police investigation.

Because the *actus reus* of this offense is the defendant's act of flight, and not the defendant's failure to answer the officer's questions, the ordinance does not appear to infringe Fifth Amendment rights. And, in fact, Melson offers no Fifth Amendment argument on appeal. We therefore turn to Melson's Fourth Amendment claim.

■ AMC § 8.30.010(A)(4) forbids a person from fleeing after a police officer has told the person to stop. Such a command to stop would not violate the person's Fourth Amendment rights if the police officer already had the authority to seize the person— that is, if the officer already had probable cause to arrest the person or reasonable suspicion to temporarily detain the person for an investigative stop.

But the ordinance would raise significant Fourth Amendment concerns if it were construed to apply to police-citizen "encounters" as defined in *Waring v. State*, 670 P.2d 357, 363 (Alaska 1983), and *Barrows v. State*, 814 P.2d 1376, 1378 (Alaska App.1991)—that is, if the ordinance applied to situations where the police have no objective justification for seizing the person. The defining quality of a police-citizen "encounter" is that the citizen retains the right to end the contact and walk away. Cases from other jurisdictions hold that the government can not impose criminal penalties on a citizen for exercising Fourth Amendment rights, even though the citizen's

---

**10.** 825 P.2d 909, 913–14 (Alaska App.1992).

exercise of those rights may "delay" or "obstruct" a police investigation.[11]

In one sentence of his opening brief to this Court, Melson argues that the police officers did not have grounds to subject him to an investigative stop. However, as we explained earlier in this opinion, when this question came up in the district court, Melson conceded that the police did have reasonable suspicion for an investigative stop.

If the officers had grounds for conducting an investigative stop, then, under the Fourth Amendment, the officers had the right to detain Melson temporarily.[12] As a consequence, Melson did not have the right to flee from the officers when they directed him to stay.

However, this is not the whole answer to Melson's Fourth Amendment argument, because the facts of Melson's case potentially present a more difficult Fourth Amendment issue. Given the conflicting testimony at Melson's trial, it is conceivable that Melson was already inside his apartment when Officer Case grabbed his wrist and ordered him not to leave. Under those facts, it is possible that Case violated Melson's Fourth Amendment rights when he reached into Melson's residence to restrain Melson. On the other hand, it is also possible that an investigative stop had already commenced and that Case's actions were justified by the "hot pursuit" exception to the warrant requirement.

This particular Fourth Amendment issue was not argued in the district court, nor is it identified in Melson's briefs to this court. To the extent that the facts of this case potentially raise this issue, we conclude that Melson failed to preserve it in the trial court and, further, that he waived it on appeal through inadequate briefing.

*Conclusion*

The judgement of the district court is AFFIRMED.

---

**11.** *See, e.g., People v. Hilgenberg,* 223 Ill.App.3d 286, 165 Ill.Dec. 784, 585 N.E.2d 180, 186 (1991), where the court held that a person could not be convicted of "obstructing a peace officer" for failing to open their door at the officer's request or otherwise allow the officer's warrantless entry into their premises to conduct an investigation. *See also United States v. Prescott,* 581 F.2d 1343, 1350–51 (9th Cir.1978):

> It cannot be a crime ... for a citizen to refuse entry to his or her home to a law enforcement officer who does not have an appropriate war-

rant.... One cannot be penalized for passively asserting this right, regardless of one's motivation. Just as a criminal suspect may validly invoke his Fifth Amendment privilege in an effort to shield himself from criminal liability, so one may withhold consent to a warrantless search, even though one's purpose be to conceal evidence of wrongdoing.

**12.** *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Coleman v. State,* 553 P.2d 40 (Alaska 1976).